EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANDRÉS FRANCESCHI, acusado y apelante.

Número 15288.

*Sometido:* 17 de noviembre de 1952. *Resuelto:* 5 de mayo de 1953.

826

*Jorge L. Córdova,* abogado del apelante; *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El fiscal acusó al Dr. Andrés Franceschi de haber infringido la sección 77 de la Ley de Contribuciones Sobre Ingresos (Núm. 74 de 1925, pág. 401). La acusación presentada reza en lo esencial así:

"Allá para el día 16 de marzo de 1947, ... el referido acusado . . . ilegal y voluntariamente y a sabiendas intentó evadir y derrotar una gran parte de la contribución sobre ingresos correspondiente al año natural contributivo que terminó el día 31 de diciembre de 1946 ... la cual contribución estaba vencida y la adeudaba el acusado a El Pueblo de Puerto Rico, consistente dicho intento en que el acusado rindió una planilla o declaración de ingresos falsa y fraudulenta al Tesorero de Puerto Rico el día 16 de marzo de 1947, en la cual declaró el acusado que su ingreso bruto durante el indicado año contributivo fué de veinticuatro mil novecientos sesenta ($24,960) dólares a sabiendas de que su verdadero ingreso bruto durante dicho período fué de cincuenta y siete mil quinientos veintisiete dólares con treinta centavos ($57,527.30) o más; que su ingreso neto fué de siete mil novecientos noventa y ocho ($7,998) dó-

lares, a sabiendas de que su verdadero ingreso neto para dicho año contributivo fué de cuarenta mil quinientos sesenta y cinco dólares con treinta centavos ($40,565.30) o más; y de que su contribución sobre ingresos por el referido año contributivo de 1946 la constituía la suma de ochocientos cuarenta y tres dólares con sesenta y dos centavos ($843.62) a sabiendas el acusado de que la contribución sobre ingresos que estaba vencida y que él adeudaba a El Pueblo de Puerto Rico por el indicado año contributivo ascendía a la suma de catorce mil seiscientos ochenta dólares con ochenta y tres centavos ($14,680.83) o más."

Durante el juicio se ofreció por las partes abundante prueba testifical y documental. Finalizado éste, el tribunal a quo declaró culpable al acusado y le sentenció a pagar una multa de $1,000 y en defecto de pago a sufrir 90 días de cárcel, más las costas. En su sentencia el tribunal a quo hizo constar que estimaba probado satisfactoriamente que el acusado declaró en su planilla la suma de $24,960 como ingresos habidos en el año 1946; que se estipuló por las partes que el acusado había tenido ingresos no declarados por la suma de $26,331, de la cual había que deducir $4,693 como ingresos que figuran en sus libros; que se estipuló, además, que el acusado tuvo otros ingresos por la suma de $1,355 y que otros testigos declararían que él recibió adicionalmente $466; que la Cruz Azul le pagó $300, la Auditoría de Puerto Rico $497.01 y una señora de apellido Cestero la suma de $50, lo que hace un total de $49,066.01 (sic); que aceptando las deducciones reclamadas por el contribuyente, ascendentes a $16,962, quedaba un ingreso neto de $32,104.01; que si de esa suma se rebajaba la cantidad de $2,400 como crédito concedido al acusado por ser jefe de familia y tener dependientes, a éste le quedaba un ingreso neto tributable de $29,704.01; y que de ese ingreso neto tributable el acusado informó en su planilla $5,598 y satisfizo una contribución de $843.62.

Continúa manifestando el juez sentenciador que:

"El solo hecho de rendir una planilla con un ingreso menor que el que realmente se ha tenido, ese hecho por sí solo no cons-

tituye el delito, pero si hay otras circunstancias, como las hay en este caso, que la corte considera plenamente probadas, que hacen creer al tribunal que el acusado tenía conocimiento de que estaba rindiendo una planilla por un ingreso menor del que había recibido durante ese año contributivo, y el acusado tenía a su alcance medios para enterarse con anterioridad de rendir la planilla, como se ha probado en este caso, y esas circunstancias que son objeto en este caso, independientemente tienen que hacer al tribunal llegar a la conclusión de que se ha cometido una infracción al artículo 77 de la Ley de Contribución Sobre Ingresos tal y como regía para la fecha en que se alega cometido ese delito, o sea como fué enmendada en la Ley de 1941 . . .".([1])

No conforme con la sentencia dictada en su contra, el acusado apeló. Ahora sostiene que el tribunal sentenciador erró (1) al determinar que su ingreso bruto para el año 1946 fué de $49,066.01, su ingreso neto tributable de $29,704.01 y la contribución de ingreso a pagar de $10,007.04; y al no determinar que su ingreso bruto, neto y contribución no fueron sustancialmente mayores de las sumas de $24,960, $5,598 y $843.62 y que por lo tanto si algún error él cometió, no se demostró intención de defraudar; así como (2) al resolver que el delito imputado no estaba prescrito al radicarse la acusación. Discutiremos estos errores en orden inverso a como han sido señalados, toda vez que de prosperar el segundo la discusión del primero se haría innecesaria.

▬▬ La planilla para el año natural contributivo de 1946 fué radicada por el acusado en el Negociado de Contribuciones Sobre Ingresos del Departamento de Hacienda el día 16 de marzo de 1947. (Las partes aceptan que ése es el punto de partida desde el cual comenzó a correr el período

---

([1]) La sección 77 de la Ley de Contribuciones Sobre Ingresos, según fué enmendada por la Ley núm. 31 de 1941 (págs. 479, 537), reza en lo pertinente así:

"*Cualquier persona que ilegal y maliciosamente* (a) *prepare* o ayudare a preparar, *o presentare* o ayudare a presentar *una falsa o fraudulenta planilla* . . . será culpable de delito grave '*felony*' y convicta que fuere será castigada con una multa no mayor de diez mil (10,000) dólares o con prisión por un término que no será menor de un (1) año, o con ambas penas y las costas del proceso...". (Bastardillas nuestras.)

prescriptivo.) La acusación fué presentada por el fiscal el día 10 de marzo de 1950, o sea cuando sólo faltaban 6 días para cumplirse 3 años de la radicación de aquélla. ¿Había prescrito el delito al momento de ser presentada la acusación? Contestamos esta pregunta en la negativa.

Aunque la sección 77 de la Ley de Contribuciones Sobre Ingresos dispone que la persona que la infrinja "será culpable de delito grave (*felony*) y convicta que fuere será castigada con una multa no mayor de diez mil dólares ($10,000) o con prisión por un término que no será menor de un año, o con ambas penas. . .", por resolución dictada por este Tribunal con fecha 4 de agosto de 1950 en el recurso de certiorari 1864, intitulado Andrés Franceschi *v.* Tribunal de Distrito de Puerto Rico, Sala de San Juan, concluímos que había sido un error del tribunal a quo considerar el delito como *felony* y no como *misdeamenor*. El artículo 79 del Código Penal preceptúa que:

"La acción penal por cualquier *misdemeanor* deberá establecerse dentro del año de su comisión, *excepto en los casos por infracción de las leyes de rentas internas en que la acción penal podrá establecerse dentro de los tres años de su comisión.*" (Bastardillas nuestras.)

La contención del acusado a este respecto es que la frase "leyes de rentas internas" se refiere más bien a la ley conocida con ese nombre específico y no a leyes como las que imponen contribuciones sobre ingresos, sobre herencias o sobre la propiedad. No estamos de acuerdo.

Es cierto que en Puerto Rico existe una ley que se conoce específicamente con el nombre de "Ley de Rentas Internas de Puerto Rico." Ésta lo es la núm. 85 de 20 de agosto de 1925 (pág. 585). Ello no significa, sin embargo, que otras leyes a virtud de las cuales nuestro gobierno impone el pago de contribuciones, como por ejemplo la núm. 74 de 1925 sobre ingresos; la núm. 99 del mismo año sobre Trasmisión de Bienes por Herencia" y las que gravan la propiedad mueble e inmueble, no sean también leyes de rentas internas. La

sección 77 de la Ley de Contribuciones Sobre Ingresos, tal cual regía para el 28 de abril de 1933, fecha en que por la Ley núm. 30 de dicho año (pág. 253) se enmendó el artículo 79 del Código Penal según ha sido copiado más arriba, rezaba en lo aquí pertinente así:

"(a) Cualquier persona que ilegal y maliciosamente (1) ayudare a preparar o presentar *una falsa o fraudulenta planilla,* declaración jurada, reclamación o documento *autorizado o exigido por las leyes de rentas internas, . . .*"(²)  (Bastardillas nuestras.)

De forma, pues, que al enmendarse el artículo 79 del Código Penal, la sección 77 de la Ley de Contribuciones Sobre Ingresos, de manera clara, terminante y taxativa hablaba de "una falsa o fraudulenta planilla, . . . o documento autorizado o exigido *por las leyes de rentas internas.*"   Además, la propia Ley de Contribuciones Sobre Ingresos, supra, lleva por título "Ley para proveer *Rentas* para El Pueblo de Puerto Rico mediante la imposición de ciertas contribuciones sobre ingresos (income tax) y para otros fines."   De ello se infiere que para aquel entonces el legislador consideraba que la planilla a ser rendida de acuerdo con la Ley de Contribuciones Sobre Ingresos era una exigida "por las leyes de rentas internas."   En su consecuencia, al disponerse en la ley enmendatoria al artículo 79 del Código Penal que la acción penal por cualquier *misdeamenor* prescribe al año *"excepto en los casos por infracción de las Leyes de Rentas Internas en que la acción penal podrá establecerse dentro de los 3 años de su comisión,"* es de presumirse que el legislador tuvo presente

---

(²) La sección 77 según fué enmendada por la Ley 2 de 25 de mayo de 1939 (Ses. Ext., pág. 13) dispone que:

*"Cualquier persona que ilegal y maliciosamente (a) prepare o ayudare a preparar o presentare o ayudare a presentar, una falsa o fraudulenta planilla...o documento autorizado o exigido por esta ley o leyes de rentas internas,.....".*

Las enmiendas introducidas a esa sección por la Ley núm. 31 de 1941 (págs. 479, 537) y 2 de 14 de marzo de 1949 (págs. 3, 5) se leen, en cuanto al punto que aquí discutimos, en forma idéntica a como quedó redactada por la enmienda de 1939.

las referidas disposiciones de la citada Ley de Contribuciones Sobre Ingresos y, por ende, que fué su propósito que las infracciones a esa ley, no obstante constituir delitos menos graves, prescribieran a los 3 años de cometidas.

■ Conforme dice el tratadista Sutherland en su obra sobre *Statutory Construction*, Tercera Edición, Vol. 2, pág. 508, sec. 5101, "Entre las cosas que ayudan de manera extrínseca a la interpretación estatutaria existen aquéllas a ser inferidas de las circunstancias existentes al momento, o que ocurren después del momento, que el estatuto empieza a regir. Puede decirse, que, como regla general, la intención legislativa deberá determinarse a la fecha en que se aprobó el estatuto." Siguiendo el principio así expuesto, es lógico concluir que conociendo el legislador que desde 1925 había calificado como de rentas internas la Ley de Contribuciones Sobre Ingresos, al enmendar en 1933 el artículo 79 del Código Penal, en la forma ya indicada, su propósito fué que las infracciones a esa ley, castigables como delitos menos graves, prescribieran a los 3 años de cometidas.

■ Por otra parte, en un caso en que la cuestión envuelta fué si cierta mercancía adquirida por Ballester Hermanos en la República Argentina, llegada al puerto de San Juan en un barco de matrícula de aquel país el 13 de enero de 1943 y en relación con la cual las autoridades de aduana no dieron autorización para descargarla hasta el 18 ó 20 del mismo mes, estaba sujeta o no al pago de la contribución sobre la propiedad, la Corte de Apelaciones de los Estados Unidos para el Primer Circuito, por voz del Juez Sr. Woodbury, se expresó así:

"Pero las palabras *contribuciones de rentas internas* no describen una categoría limitada de contribuciones. Se les usa para describir cualquier contribución que un gobierno puede imponer, a excepción de derechos de importación. Es decir, *se usan para describir toda clase de contribuciones en general derivadas de fuentes internas*, en contraste con contribuciones de-

rivadas de fuentes externas." (Bastardillas nuestras.) *Buscaglia* v. *Ballester*, 162 Fed. 2d 805; *certiorari* denegado, 332 U. S. 816.

Aplicando ese razonamiento podríamos, asimismo, llegar a la conclusión de que las impuestas por la Ley de Contribuciones Sobre Ingresos son contribuciones de rentas internas. El delito no había prescrito.

▮ Al discutir el primer error señalado, el acusado sostiene que "de acuerdo con la Ley de *Income Tax* de Puerto Rico a Andrés Franceschi le estaba prohibido incluir en su planilla de 1946 aquella parte de los ingresos de la sociedad de gananciales correspondiente a su exesposa Kirstine Smith, que su obligación era declarar la mitad de los ingresos brutos gananciales habidos en el 1946, más sus ingresos privativos, y podía deducir la mitad de los gastos de la sociedad de gananciales y la totalidad de sus gastos privativos; que no hay ninguna prueba de que dedujera un solo centavo más de lo que tenía derecho a deducir; y que si existe prueba de que su ingreso bruto fué mayor de la suma de $24,960 que declaró, la diferencia es tan poca que no justifica la conclusión de que hubiera intención criminal." (³)

Si bien en la declaración individual de ingresos rendida por el año 1946, al contestar la pregunta que bajo el número 4 aparece en la primera página de la misma al efecto de si "¿Estaba usted casado y vivía con su esposa o esposo en el

---

(³) La sección 18 de la Ley de Contribuciones Sobre Ingresos, según fué enmendada por la Ley núm. 31 de 1941 (págs. 479, 507) preceptúa, en lo esencial que:

"Para los fines de la contribución normal solamente se concederán los siguientes créditos:

"(a) . . . . . . . . . .

"(b) En el caso de una persona soltera, una exención personal de $800; o en el caso del jefe de una familia o *una persona casada que vive con su esposo o esposa, una exención personal de $2,000.* Un esposo o esposa que vivan juntos recibirán una sola exención personal. La cantidad de dicha exención personal será de $2,000.00.

" . . . . . . . . .

"(2) El crédito concedido por la subdivisión (b) de esta sección será, en el caso que el estado civil del contribuyente cambie durante su año

último día de su año contributivo?", el acusado contestó "no"; si bien al contestar la pregunta 6 de la referida declaración individual de ingresos, el acusado hizo constar que su estado civil había cambiado en septiembre de 1946; si bien él ofreció en evidencia copia certificada de la sentencia de divorcio dictada en su contra con fecha 6 de septiembre de 1946; y si bien una de los testigos presentados por el acusado manifestó que éste era divorciado, sin embargo, durante el juicio celebrado en el tribunal a quo él no alegó que la planilla rendida lo hubiera sido de conformidad con las secciones 18 y 24 de la Ley de Contribuciones Sobre Ingresos, es decir, como persona casada que no vive con su esposa, y que se divorció durante el año contributivo.

Sea ello como fuere, no es ésa la cuestión ante nos. La verdadera cuestión que ahora nos ocupa es si el acusado "ilegal y voluntariamente y a sabiendas intentó evadir y derrotar una gran parte de la contribución sobre ingresos correspondiente al año natural contributivo que terminó el día 31 de diciembre de 1946." La cuidadosa lectura que de la prueba ofrecida por las partes hemos hecho, tanto de la testifical como de la documental, así como de los *exhibits* elevados, unos en copias y otros en su forma original, nos convencen de que ésa fué una realidad. En la planilla sometida por él figura la cantidad de $24,960 como ingreso bruto. Sin em-

contributivo, la suma de (A) una cantidad que tenga la misma proporción a $800 como el número de meses durante los cuales el contribuyente era soltero tenga con doce meses, más (B) una cantidad que tenga la misma proporción a $2,000 como el número de meses durante los cuales el contribuyente ha sido una persona casada que viva con su esposo o esposa o ha sido un jefe de familia tenga con doce meses. Para los fines de este párrafo no se tomará en consideración una parte fraccional de un mes, a menos que dicha parte fraccional sea más de medio mes, en cuyo caso se considerará como un mes completo." (Bastardillas nuestras.)

Véase también el artículo 180 del Reglamento núm. 1 para instrumentar la Ley de Contribuciones Sobre Ingresos.

La sección 24 de la Ley de Contribuciones Sobre Ingresos, según fué enmendada por la Ley núm. 31, supra, reza así:

"(a) Cada uno de los siguientes individuos deberá presentar una declaración bajo juramento demostrando específicamente las partidas de

bargo, durante el juicio se estipuló por las partes que de declarar 284 testigos éstos declararían que le pagaron al Dr. Franceschi por concepto de partos, operaciones y visitas la suma de $26,331 y que el acusado aceptaba haber recibido ese dinero, así como que de esa cantidad en sus libros sólo aparecían $4,693. También se estipuló que de declarar 14 testigos éstos dirían que le pagaron al acusado la suma de $1,545, cantidad de la cual únicamente aparecían en los libros $190; que de la Cruz Azul el acusado recibió $300 y sólo llevó a sus libros la suma de $3; que de Auditoría recibió $247.01 y que esa cantidad no figuraba en sus libros. Asimismo se estipuló por las partes que la suma de $21,638 pagada al Dr. Franceschi por varios clientes no aparecía en los libros de éste. Sin embargo, el acusado no ofreció prueba para controvertir esas estipulaciones, ni explicó satisfactoriamente por qué actuó en la forma en que lo hizo. El tribunal a quo apreció la totalidad de la prueba que tuvo ante sí y llegó a la conclusión que ya hemos indicado. El acusado, pues, no solamente dejó de contabilizar innumerables cantidades de dinero recibidas de sus clientes, sino que también en muchos casos hizo figurar en sus libros sumas considerablemente menores que las realmente recibidas por él. Al así actuar, su intención de evadir y derrotar el pago de la contribución quedó claramente establecida.

---

su ingreso bruto y las deducciones y créditos admisibles a virtud de este título.

"(1) Todo individuo que tenga un ingreso neto por el año contributivo de $800 o más, si fuere soltero o *si fuere casado y no viva con su esposo o esposa.*

"(2) Todo individuo que tenga un ingreso neto por el año contributivo de $2,000 o más, *si es casado o vive con su esposo o esposa;* y

"(3) Todo individuo que tenga un ingreso bruto por el año contributivo de $5,000 o más sin considerar el montante de su ingreso neto.

"(*b*) Si un esposo y esposa *que viven juntos* tienen un ingreso neto por el año contributivo de $2,000 o más, o unidos tienen un ingreso bruto durante dicho año contributivo de $5,000 o más, el ingreso total de ambos deberá ser incluído en una sola declaración conjunta, debiendo computarse la contribución normal y adicional sobre el ingreso en conjunto. El ingreso neto o bruto recibido por uno de los cónyuges no podrá ser dividido entre ambos cónyuges." (Bastardillas nuestras.)

En *Spies* v. *United States*, 317 U. S. pág. 492, 87 L. ed. 418, que es un caso normativo sobre la materia, *Spies* fué convicto de tratar de evadir y derrotar la Ley de Contribuciones Sobre Ingresos, en violación del artículo 145(*b*) de la Ley de Rentas Internas federal de 1936, 49 Stat. 1648, 1703.[4] En el curso de su opinión, el Tribunal Supremo de la nación se expresó del siguiente modo:

"El gobierno de los Estados Unidos ha descansado para el cobro de sus contribuciones sobre ingresos en gran parte en las revelaciones que haga el propio contribuyente más bien que en el sistema de exigir de aquéllos de quien se recibe el ingreso, que retengan la contribución. Este sistema puede funcionar con éxito solamente si las personas que tienen ingresos tributables llevan y rinden cuentas fieles de los mismos. La desidia o el engaño de los contribuyentes puede perjudicar en muchas formas la debida y puntual administración del sistema, así como los ingresos mismos. El Congreso ha impuesto una variedad de sanciones para la protección del sistema y de los ingresos.

"   .   .   .   .   .   .   .   .   .

"*No es el propósito de la ley penalizar una diferencia franca de criterio o errores inocentes cometidos a pesar del ejercicio de un cuidado razonable.* Tales errores son corregidos mediante la imposición de una deficiencia y la tasación de la misma, con intereses por la demora . . .

"   .   .   .   .   .   .   .   .   .

"Por vía de ilustración, y no por vía de limitación, creemos que *la intención afirmativa de realizar un acto voluntario puede inferirse de conducta semejante a la de llevar dos juegos de libros de contabilidad, de hacer asientos falsos o alteraciones en los mismos, o de preparar facturas o documentos falsos, de la*

---

(⁴) La sección 145(*b*) de la Ley de Rentas Internas federal dispone: "Cualquier persona que en armonía con lo provisto por este título venga obligada a cobrar, rendir cuentas de, y pagar cualquier contribución impuesta por este título, que voluntariamente dejare de cobrar o de rendir y pagar fielmente tal contribución, y cualquier persona que voluntariamente tratare en cualquier forma de evadir o derrotar cualquier contribución impuesta por este título, o el pago de la misma, será, en adición a las penalidades fijadas por la ley, culpable de delito grave y, al ser convicta del mismo, castigada con multa que no excederá de $10,000 o con prisión por un término máximo de cinco años, o ambas penas, más las costas del proceso."

*destrucción de libros o documentos, de la ocultación del activo o de fuentes de ingresos, del manejo de los asuntos propios en forma tal que eluda la preparación de las constancias corrientes en transacciones de esa naturaleza, y de cualquier conducta cuyo efecto probable sea inducir a error o a ocultación. Si el propósito de evadir el pago de la contribución entra en juego en tal conducta, el delito puede ser probado,* aún si semejante conducta sirve para otros fines, como por ejemplo la ocultación de otro delito." (Bastardillas nuestras.)

El caso de *Gaunt* v. *United States*, 184 F. 2d 284, 290, envuelve también una infracción de la sección 145 (*b*) de la Ley de Rentas Internas federal. Al resolverlo, la Corte de Apelaciones de los Estados Unidos para el Primer Circuito manifestó:

"La voluntariedad (*wilfulness*) es, desde luego, una cuestión de hechos. Prueba directa de ella no es esencial. La misma puede inferirse de actos y circunstancias, y la inferencia puede hacerse de una combinación de actos y circunstancias, aunque cada acto separado y cada circunstancia de por sí no sea concluyente. (Cita.) Además, en casos de esta naturaleza, una intención voluntaria afirmativa puede inferirse de . . . cualquier conducta, cuyo efecto probable sea inducir a error u ocultación. (Cita.) Así, pues, *el hacer figurar en la planilla canti-- dades inferiores a las recibidas por el acusado no es en forma alguna la única base para determinar la voluntariedad de la supuesta intención de éste de evadir o derrotar el pago de la contribución. El hacer constar en ella cantidades inferiores a las recibidas es un hecho a ser considerado a la luz de toda la situación, . . .".* (Bastardillas nuestras.)

No es necesario que haya prueba directa de una intención maliciosa de evadir o derrotar el pago de la contribución. Tal intención puede inferirse de los actos del contribuyente, pudiendo surgir semejante inferencia de la totalidad de los actos realizados por éste, no obstante el hecho de que cada acto independiente por él realizado pueda carecer de importancia. La intención de evadir o derrotar el pago de la contribución

es una cuestión de hechos a ser determinada tomando en consideración todas las circunstancias concurrentes. *Battjes* v. *United States*, 172 F.2d 1, 5.

■ Es innegable que El Pueblo no probó las cantidades exactas alegadas en la acusación. Ello, sin embargo, carece de importancia. *United States* v. *Johnson*, 319 U. S. 503, 517, en el cual también se dijo que: "El exigir más prueba o prueba más minuciosa que la que surge de los autos del presente . . . equivaldría a resolver que la ocultación habilidosa constituye una barrera infranqueable." Véanse asimismo *Stinnett* v. *United States*, 173 F.2d 129, 130 y *Cave* v. *United States*, 159 F.2d 464. La preparación y radicación de una planilla fraudulenta es el método más corriente y más flagrante de tratar de evadir y derrotar voluntariamente una contribución sobre ingresos. *Rick* v. *United States*, 161 F.2d 897.

■■ No se trata en este caso, como hemos visto, de una divergencia o discrepancia de criterio respecto a la forma en que el acusado debió rendir su planilla. De existir meramente tal discrepancia o divergencia no habría delito. *Spies* v. *United States*, supra; Mertens, *Law of Federal Income Taxation*, Vol. 10, sección 55.15, pág. 27. Aquí, repetimos, la médula del delito consiste en rendir una declaración de ingresos falsa y fraudulenta, a sabiendas, voluntariamente, y con la intención o propósito de evadir o derrotar el pago de la contribución. Demostrados esos extremos, como a juicio del tribunal sentenciador lo fueron en este caso, el delito ha quedado probado. Véanse *Guzik* v. *United States*, 54 F.2d 618, 619; *Myres* v. *United States*, 174 F.2d 329, 334; *Cave* v. *United States*, supra; *United States* v. *Croessant*, 178 F.2d 96; Mertens, ob. cit., Vol. 10, sección 55.36, pág. 73.

*Debe confirmarse la sentencia apelada.*