José A. Pérez Vega y su esposa Ruth Herrera de Pérez, peticionarios, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Herminio Miranda, Jr., Juez, demandado; El Pueblo de Puerto Rico, interventor.

*Número:* C-65-105      *Resuelto:* 25 de octubre de 1966

750

*Ángel Viera Martínez*, abogado de los peticionarios; *J. B. Fernández Badillo, Procurador General, y Héctor R. Orlandi*

*Gómez, Procurador General Auxiliar,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se trata, en los méritos, de una causa criminal por violación de la Ley de Contribuciones Sobre Ingresos. Expedimos auto de *certiorari* a los solos efectos de (1) determinar si el delito está prescrito o no y (2) para revisar la calificación del delito, esto es, para determinar si el delito en cuestión es grave o menos grave.

Examinaremos en primer lugar lo relativo a la prescripción. Para ello precisa establecer la siguiente relación de fechas y sucesos.

1. En 10 de abril de 1962 los acusados firmaron las planillas.
2. En 11 de abril de 1962 se recibieron las planillas en el Negociado de Contribuciones Sobre Ingresos.
3. En 9 de abril de 1965 se presentó la denuncia, se determinó causa probable y se expidió la orden de arresto.
4. En 10 de abril de 1965 se practicó el arresto.
5. En 8 de junio de 1965 se presentó la acusación. Los acusados habían renunciado a la vista preliminar en 19 de mayo de 1965.

El Código Penal dispone como regla general, que los delitos menos grave prescriben al año de su comisión y los delitos grave prescriben a los tres años de cometidos. Hay excepciones. Por ejemplo, en los casos de los delitos de asesinato, de malversación de caudales del erario público, y de falsificación de documentos públicos, la acción penal puede ejercitarse en cualquier tiempo sin limitación alguna. Arts. 77–79 del Código Penal; 33 L.P.R.A. secs. 231–233.

Otra de las excepciones a la regla general antes mencionada consiste en los casos de infracciones a las leyes de rentas internas, en cuyos casos la acción penal puede establecerse dentro de los tres años de cometido el delito, aunque se trate

de un delito menos grave. Art. 79, Código Penal; 33 L.P.R.A. sec. 233.

■ Las violaciones a la Ley de Contribuciones Sobre Ingresos son violaciones a una ley de rentas internas y por lo tanto el término es de tres años, salvo que por ley se disponga otra cosa. *Pueblo* v. *Franceschi*, 74 D.P.R. 825, 829–831 (1953). En el contexto del Art. 79 del Código Penal las palabras "leyes de rentas internas" se utilizan allí para describir cualquier contribución que un gobierno puede imponer, a excepción de derechos de importación. Se usan para describir toda clase de contribuciones en general derivadas de fuentes internas, en contraste con las contribuciones derivadas de fuentes externas. *Buscaglia* v. *Ballester*, 162 F.2d 805. *Cert. den.* 332 U.S. 816.

■ De manera que en el caso de autos el término prescriptivo del delito es de tres años, no empece si el delito es grave o menos grave.

■ En este caso no hay controversia en cuanto a la fecha inicial para computar el término prescriptivo. Al igual que en *Franceschi*, supra, las partes aceptaron que la fecha de presentación de las planillas (11 de abril de 1962) es el punto de partida desde el cual comenzó a correr dicho término. Los peticionarios expresan en su memorando de autoridades que "En un caso de violación a la Ley de Contribución Sobre Ingresos la fecha de comisión del delito es la fecha de presentación de las planillas." Como en *Franceschi*, supra, aceptamos que así es.

La posición del apelante es que la fecha en que se comenzó la acción penal, o sea, la fecha en que se comenzó a perseguir el delito, debe ser la fecha de la radicación de la acusación— 8 de junio de 1965—o en la alternativa la fecha en que debió celebrarse la vista preliminar y en la cual los acusados renunciaron a ella, el 19 de mayo de 1965, y que por lo tanto el delito había prescrito, pues habían pasado más de tres años desde la fecha de la comisión del delito, que es

la fecha de la presentación de las planillas en el Negociado de Contribución Sobre Ingresos, o sea, el 11 de abril de 1962. Se basa el apelante en la Regla 34 de Procedimiento Criminal la cual expresa que la primera alegación de parte del Pueblo en un proceso iniciado en el Tribunal Superior es la acusación.

El Procurador General sostiene que la fecha que debe tomarse en cuenta para determinar cuándo comenzó a perseguirse el delito es el 9 de abril de 1965, fecha en que se presentó la denuncia, se determinó causa probable y se expidió la orden de arresto. Una simple operación matemática demuestra que si el Procurador está en lo cierto el delito no ha prescrito.

El Procurador tiene razón. El punto está resuelto adversamente para el apelante mediante jurisprudencia nuestra, antigua y reciente. Veámosla en ese orden. En *Pueblo* v. *Rivera,* 9 D.P.R. 403, 407 (1905) resolvimos que "el principio del proceso es el mandamiento de arresto y no la subsiguiente acusación o presentación de la misma." "Es evidente," explicamos allí, a la pág. 408, "que el principio del proceso es el arresto o el primer paso dado por el fiscal, cualquiera que sea, a fin de traer al delincuente ante la justicia." Posteriormente, en *Pueblo* v. *Capestany,* 37 D.P.R. 586, 595 (1928) dijimos que desde que se ordena el arresto es que en verdad se mueve la maquinaria de la justicia contra el acusado. En dicho caso, como en el de autos, el arresto del acusado fue hecho antes de transcurrir los tres años de prescripción de la acción criminal y la acusación fue presentada después de ese tiempo. Allí expresamos, a la pág. 595, a la luz de las disposiciones de derecho positivo entonces vigentes, que:

"En Puerto Rico una vez que se presenta una denuncia al Fiscal éste procede a la investigación del caso actuando como un magistrado investigador y se encuentra motivos suficientes para ello decreta el arresto del acusado y es en verdad desde ese momento que la maquinaria de la Justicia se mueve contra deter-

minada persona y, parece lógico que, dados los términos del estatuto, sea ese el momento básico para computar la prescripción. Si el arresto no se hubiere decretado, entonces sería la presentación de la acusación la que debería tomarse en cuenta."

Desde luego, hoy día no es el fiscal quien hace la determinación de causa probable y quien ordena el arresto sino que es un magistrado, pero el argumento y su razón de ser —hecha la sustitución del fiscal por el magistrado—quedan iguales. Al decretarse el arresto se mueve la maquinaria de la justicia contra el acusado. En *Pueblo* v. *Tribunal Superior*, 84 D.P.R. 24, 27–28 (1961), luego de examinar nuestras decisiones sobre el particular, expresamos lo siguiente:

"Hemos reexaminado la cuestión aquí envuelta y no vemos razón alguna para variar el criterio enunciado hace más de medio siglo. El propósito fundamental de la disposición fijando un término de prescripción es informar al acusado con suficiente anticipación de la intención de procesársele y de la naturaleza del delito que se le imputa, de forma que no se menoscabe su oportunidad de defenderse antes de que la evidencia disponible para establecer su inocencia desaparezca o se oblitere con motivo del transcurso del tiempo. Actualmente, tanto la radicación de una acusación o denuncia como la expedición de una orden de arresto luego de la determinación de causa probable cumplen con este propósito de delimitar la naturaleza de la ofensa e identificar cumplidamente al acusado. Añadimos de paso que cuando la interrupción del período prescriptivo se obtiene mediante la expedición de una orden de arresto, ésta debe cumplimentarse con diligencia y que a menos que existan circunstancias excepcionales que lo impidan, la falta de diligenciamiento dentro de un período razonable puede anular los efectos de la interrupción.

"La norma imperante localmente ha recibido la sanción del Instituto Americano de Derecho en su redacción del Código Penal Modelo. Véase, la sección 1.07 (5) y 6. En las jurisdicciones en donde se dispone un término a computarse considerando el inicio del proceso criminal se ha adoptado idéntica interpretación a la nuestra." (Citas.)

■ La Regla 34 (a) es una definición de la acusación pero no pretende establecer límites para la prescripción del

delito. Difícilmente puede sostenerse que la maquinaria del Estado no comienza a moverse contra el acusado hasta el día en que formalmente se radica una acusación y que no ocurre nada durante los pasos anteriores de determinación de causa probable y arresto. *Miranda* v. *Arizona,* 384 U.S. 436, 477 (1966); *Escobedo* v. *Illinois,* 378 U.S. 478, 492 (1964).[1] Resolvemos, pues, el primer punto antes mencionado en el sentido de que el delito no está prescrito.

■ Pasemos ahora a la segunda cuestión planteada en este recurso: la calificación del delito. No hay duda de que se trata de un delito grave. Veamos la propia letra expresa de la ley que crea el delito. Se trata de la Sec. 145 (b) de la Ley de Contribuciones Sobre Ingresos de 1954, 13 L.P.R.A. sec. 3145 (b). Lee así:

"(b) Cualquier persona obligada bajo este Subtítulo a recaudar, dar cuenta de, y entregar en pago cualquier contribución impuesta por este Subtítulo, que voluntariamente dejare de recaudar o de dar cuenta de y entregar en pago, fielmente, dicha contribución, y cualquier persona que voluntariamente intentare de algún modo evadir o derrotar cualquier contribución impuesta por este Subtítulo o el pago de la misma, en adición a otras penalidades provistas por ley, será culpable de delito grave y castigada con multa no mayor de $10,000 ó reclusión por no más de 5 años en la institución penal que designe el Secretario de Justicia, o ambas penas, más las costas del proceso."

Como puede verse la propia ley denomina grave al delito allí definido y es innecesario, y no sería correcto, recurrir a ningún otro estatuto para buscar la calificación del delito. Si esta disposición confligiese con el Código Penal prevalecería la citada Sec. 145 (b) por tratarse de una ley especial (en contraste con el Código que es una ley general) y porque

---

[1] "It is at this point (when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any way) that our adversary system of criminal proceedings commences. . . ." *Miranda* v. *Arizona,* supra. Véase también el penúltimo párrafo de la opinión del Tribunal en *Escobedo* v. *Illinois,* supra.

se trata de una ley posterior al Código. Pero la realidad es que no hay conflicto entre esta ley y el Código Penal. Como se verá, ambas disposiciones son armonizables.

En sus Disposiciones Generales el Código contiene su Art. 14, 33 L.P.R.A. sec. 35, en el cual establece que los delitos castigables "con la pena de muerte o de presidio" son delitos graves. La anacrónica alusión en dicho artículo a la pena de muerte basta para demostrar con qué cuidado debemos bregar con este artículo al aplicarlo judicialmente. También dispone dicho artículo que delito menos grave comprende todos los demás y que "Cuando un delito castigable con pena de presidio, apareja también la de multa o cárcel, a discreción del tribunal, se considerará menos grave, para todos los efectos, después de dictada sentencia imponiendo una pena que no fuere de presidio." Esto se refiere a aquellos delitos que no están definidos expresamente como graves o como menos graves por el legislador al crearlos.

Esas disposiciones generales que contienen los códigos son reglas supletorias para ayudar a la interpretación de los mismos en los casos en que no haya expresión específica y expresa del legislador. Naturalmente, esas reglas generales supletorias no pueden destruir una calificación expresa del delito hecha por la ley. Recuérdese que tanto el legislador decretó la disposición general supletoria como decretó posteriormente la disposición específica y expresa. Como es de esperarse, el mismo Código provee para ello. En su Art. 15, al expresar que toda delincuencia declarada delito grave apareja pena de presidio por un término máximo de cinco años, hace la siguiente salvedad: "Excepto en los casos en que se prescriba otra pena." En buena interpretación de estatutos no hay duda de que la manifestación legislativa *especial, posterior* y *expresa* debe prevalecer sobre una disposición general y anterior. Así habría que resolver si existiese conflicto entre esas dos disposiciones pero no lo hay.

Preocupado como estaba el tribunal de instancia en el caso de autos por si los acusados tenían o no derecho a juicio

por jurado, (²) hizo una aplicación injustificada de lo resuelto por nosotros en *Pueblo* v. *Franceschi,* supra. En dicho caso hicimos una alusión al recurso de *certiorari* Núm. 1864 titulado *Franceschi* v. *Tribunal,* resuelto mediante nuestra Resolución de 4 de agosto de 1950. La situación era distinta. Allí se trataba del Art. 77 de la Ley de Contribuciones Sobre Ingresos de 1924, según había sido enmendado dicho artículo por la Ley Núm. 31 de 12 de abril de 1941. Dicho artículo imponía multa o cárcel. Se trataba allí de otra ley no idéntica a la aquí envuelta y lo allí dicho no es aplicable a la citada Sec. 145 (b) de la Ley de Contribuciones Sobre Ingresos de 1954, que es la que aquí nos concierne. (³)

La citada Sec. 145 (b) de la Ley de 1954 declara grave el delito allí establecido pero en vez de disponer que su comisión será castigada con multa o presidio mandatoriamente dispone que el convicto será recluido por no más de 5 años en la institución penal que el Secretario de Justicia designe. Es claro que la ley como está es menos onerosa para con el convicto que si hiciese mandatoria la reclusión en presidio.

En el caso de la citada Sec. 145 (b) de la Ley de Contribuciones Sobre Ingresos de 1954 no puede presumirse que la calificación de grave es una inadvertencia del legislador. Naturalmente, en primer lugar y salvo irrefutable prueba en contrario, hay que presumir que el legislador quiso decir

---

(²) En su Resolución de 19 de agosto de 1965, en parte, se expresa así el tribunal recurrido:

"Como se trata de un caso que por disposición expresa de la Ley de Contribución sobre Ingresos, el Tribunal Superior tiene jurisdicción original y exclusiva en el mismo y a la fecha del juicio en efecto si se ventilara como delito grave existiría el incuestionable derecho de los acusados a ser juzgados por un jurado, entendemos que debemos manifestarnos sobre el particular, a la luz de las interpretaciones de ley que hasta la fecha rigen la materia en nuestra jurisdicción.

(³) Además en nuestra Resolución de 4 de agosto de 1950, a la cual hicimos alusión en *Pueblo* v. *Franceschi,* supra, no discutimos el asunto ya que para la solución de aquel recurso encontramos que "carecía de consecuencias el error."

lo que en efecto dijo. En segundo lugar, las siguientes circunstancias demuestran que debe descartarse la posibilidad de la inadvertencia:

1. La pena ha sido fijada en proporción con la gravedad del delito. Mientras el delito definido en el inciso (b) de dicha Sec. 145 al cual se califica de grave puede conllevar un *máximo* de reclusión de cinco años, el definido en el inciso (a) de la misma sección se califica de menos grave y sólo puede aparejar reclusión por un máximo de un año.

2. El Código Federal de Rentas Internas de 1939, del cual fue copiada casi literalmente nuestra Sec. 145 vigente, califica los delitos aludidos como menos grave y grave respectivamente, igualmente que como lo hace nuestra ley. 26 U.S.C. § 145, ed. 1952. Véase 10 Mertens, *Law of Federal Income Taxation,* pág. 70, ed. 1948.

3. Al aprobarse la Ley de Contribuciones Sobre Ingresos de 1954 hacía más de un año que este Tribunal había resuelto el caso de *Pueblo* v. *Franceschi,* supra, y es de presumir que el legislador tenía conocimiento de ello. Sin embargo, al aprobar la Sec. 145(b) de la nueva ley, especificó la calificación de grave para ese delito.

Finalmente, concluir que el delito es menos grave, a pesar de que el legislador expresamente lo calificó de grave, por el mero hecho de que no hizo mandatoria la reclusión en el presidio (tampoco la hizo mandatoria en la cárcel) equivaldría a concluir que el legislador está impedido de crear excepciones a la regla general antes mencionada del Art. 14 del Código Penal. Tal conclusión, desde luego, sería absurda. Obviamente no solamente puede el legislador crear excepciones a su propio Art. 14 sino que también puede derogarlo. Ya en *Pueblo* v. *Méndez,* 65 D.P.R. 702, 704 (1946) habíamos expresado que ". . . la distinción general comprendida en el

artículo 14 entre un *felony* y un *misdemeanor* no es de aplicación aquí. La Legislatura eligió disponer en este caso especial, y tenía todo derecho para así hacerlo . . . ."

Es bien sabido que la función de calificar los delitos corresponde a los organismos legislativos que son los que los crean. *Pueblo* v. *Méndez*, supra; *People* v. *Harvey*, 123 N.E.2d 81 (1954); *People* v. *Causley*, 300 N.W. 111 (1941); *Nation* v. *State*, 17 So. 521 (1944); *State* v. *Arris*, 115 Atl. 648 (1922); *State* v. *Krueger*, 217 S.W. 310 (1919). En lo concerniente a la calificación del delito resolvemos, pues, que se trata de un delito grave.

*Procede dejar sin efecto la Resolución del Tribunal Superior, Sala de San Juan, de 19 de agosto de 1965 en cuanto resuelve que el delito definido en la Sec. 145(b) de la Ley de Contribuciones Sobre Ingresos de 1954 es un delito menos grave, y confirmar la de 16 de septiembre del mismo año que declaró sin lugar la moción de archivo de los acusados basada en que el delito está prescrito.*