EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sylvia Trigo Margarida<br><br>        Recurrida<br><br><br>            v.<br><br><br>Junta de Directores Condominio El Campeador<br><br>        Peticionaria | Certiorari<br><br>2012 TSPR 178<br><br>187 DPR ____ |

Número del Caso: CC-2011-639


Fecha: 28 de noviembre de 2012


Tribunal de Apelaciones:

            Región Judicial de San Juan

Abogada de la Peticionaria:

            Lcda. Sonimar Lozada Rodríguez


Abogado de la Parte Recurrida:

            Lcdo. Andrés Colberg Trigo


Materia: Ley de Condominios – Proporción de titulares requerida para cambiar el criterio de participación sobre los elementos comunes; definición de anejo y de elemento privado.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sylvia Trigo Margarida
        Recurrida

            v.                                    Certiorari
                              CC-2011-0639
Junta de Directores Condominio
        El Campeador
        Peticionaria


Opinión del Tribunal emitida por el Juez Asociado señor Rivera García


En San Juan, Puerto Rico, a 28 de noviembre de 2012.

En esta ocasión nos corresponde determinar primeramente si los titulares de un inmueble sometido al régimen de propiedad horizontal con anterioridad a la aprobación de la Ley Núm. 157 de 4 de junio de 1976, 31 L.P.R.A. sec. 1291, deben contar con una mayoría de dos terceras partes que a su vez representen las dos terceras partes del valor en los elementos comunes, para cambiar el cómputo para calcular el porcentaje de participación sobre los elementos comunes del inmueble. Asimismo, debemos resolver si un área de a azotea de un apartamento "penthouse" (PH) es un anejo y, por tanto, debe ser excluida al computar

el porciento de participación de esa propiedad en los elementos comunes. Ello, cuando se modifica el cálculo del porcentaje de participación sobre los elementos comunes del criterio de valor de la propiedad al criterio de medida superficial, posterior a la enmienda realizada por la Ley Núm. 281-2008 (31 L.P.R.A. sec. 1291) al Art. 3 de la Ley Núm. 103-2003, conocida como la Ley de Condominios, 31 L.P.R.A. sec. 1291a (Ley de Condominios). Para ese cometido, es preciso evaluar el articulado estatutario que rige la referida norma *vis a vis* la doctrina interpretativa de lo que constituye un elemento privado y un anejo.

Así, con el propósito de elaborar sobre ese análisis y atender adecuadamente el recurso de autos, pasemos a hacer una referencia del trasfondo fáctico y un cuidadoso estudio de la prueba presentada.

I

El 2 de diciembre de 2009, el Consejo de Titulares (Consejo) del Condominio El Campeador (Condominio) celebró una Asamblea Extraordinaria, a la cual asistió el 87.58% de los titulares de los apartamentos.[1] Con el voto de todos los presentes, se decidió cambiar la fórmula del porcentaje de participación sobre los gastos comunales.[2] Concretamente se resolvió que la participación que corresponde a cada apartamento ya no sería calculada utilizando el valor de

---

[1] El condominio El Campeador consta de 24 apartamentos y fue sometido al régimen de propiedad horizontal el 16 de junio de 1972 ante el notario público Lcdo. Peter J. Trías.

[2] No surge del legajo de autos una lista con los nombres de los titulares que estuvieron presentes. Aunque en la minuta se menciona el nombre de la señora Trigo Margarida, no podemos concluir que esta votara a favor de la enmienda impugnada.

estos, sino a partir de su medida superficial.[3] En consecuencia, la aprobación del nuevo cómputo resultó en un aumento en la cuota de mantenimiento del apartamento PH de $699 a $1,370 mensuales, cantidad que según se dispuso, debería ser satisfecha a partir del mes de enero de 2010.

Inconforme con la decisión del Consejo, la Sra. Sylvia Trigo Margarida (señora Trigo Margarida o recurrida),[4] titular del apartamento PH, se comunicó con la administradora del Condominio para impugnar ante la Junta de Directores la nueva cuota por considerarla abusiva e ilegal.[5] Sin embargo, al no recibir respuesta, el 13 de mayo de 2010 la recurrida presentó una querella ante el Departamento de Asuntos del Consumidor (DACo). En esencia, la recurrida adujo ante la agencia administrativa que el aumento en su cuota de mantenimiento fue ilegal.[6] Asimismo, arguyó que el cálculo que incrementó su cuota de mantenimiento era contrario a lo dispuesto en el Art. 3 de la Ley de Condominios, Ley Núm. 103-2003 (31 L.P.R.A. sec. 1291a) (Art. 3), porque consideró la superficie total del apartamento, incluyendo la azotea.[7] Objetó, además, el proceso de votación, ya que aunque la asamblea se

---

[3] En particular, la Minuta revela que tras la recomendación de dos abogados, el cambio en la fórmula se realizó para conformar el cómputo a unas enmiendas realizadas a la Ley de Propiedad Horizontal por la Ley Núm. 157 de 4 de junio de 1976. Véase Minuta de la reunión anual de titulares de 2 de diciembre de 2009, Apéndice del recurso de *certiorari*, pág. 51.

[4] La Sra. Sylvia Trigo falleció el 27 de diciembre de 2010. Dicha parte fue sustituida en el pleito por su hermana la Sra. Carmen M. Trigo Margarida y sus sobrinas, las señoras Mercedes del Carmen, María C. y María Z. Trigo Ferraiuoli en representación del Sr. Dionisio R. Trigo Margarida. Apéndice del recurso de *certiorari*, pág. 236, esc. 1.

[5] Véase Apéndice del recurso de *certiorari*, pág. 20.

[6] Apéndice del recurso de *certiorari*, pág. 36.

[7] Según la escritura matriz, el área total del apartamento PH es de 7,654 pies cuadrados.

constituyó con un quórum de 87.58% de los propietarios que componen el Consejo de Titulares del Condominio[8] y se obtuvo el voto unánime de los allí presentes, un cambio de esta naturaleza requería el voto unánime de todos los titulares del Condominio.[9]

Así las cosas, el 14 de julio de 2010 la Junta contestó la querella y alegó que el aumento en la cuota de mantenimiento es cónsona con las disposiciones de la Ley de Condominios. Para sustentar su posición, explicó que la cuota de mantenimiento establecida antes de los cambios aprobados por la Asamblea se basaba en el valor de la propiedad. De esa forma, expresó que se modificó la cuota de mantenimiento para que se computara a partir del área superficial de cada apartamento y así obedecer lo dispuesto en el Art. 8, según enmendado por la Ley Núm. 157, *supra*. Art. 8 (31 L.P.R.A. sec. 1291f).

La vista administrativa fue pautada para el 5 de agosto de 2010. Subsiguientemente, el 25 de octubre de ese mismo año DACo emitió una resolución desestimando la querella de la señora Trigo Margarida. En sus conclusiones de derecho, la agencia determinó que la escritura matriz del Condominio establece que el área de terraza, cuarto para acondicionamiento de aire central y clóset ubicada en

---

[8] Minuta de la reunión anual de titulares de 2 de diciembre de 2009, Apéndice del recurso de *certiorari*, pág. 53. Se determinó que la fecha de efectividad del cambio en el cálculo sería a partir del 1 de enero de 2010.

[9] No surge del legajo de autos una lista con los nombres de los titulares que estuvieron presentes. Aunque en la minuta se menciona el nombre de la señora Trigo Margarida, no podemos concluir que esta votara a favor de la enmienda impugnada.

la azotea del apartamento PH le pertenece a esa propiedad. Por lo tanto, razonó que el cambio en el cómputo de la cuota de mantenimiento fue conforme a derecho. Concretamente, tras analizar el Art. 3 de la Ley de Condominios enmendado por la Ley Núm. 281, *supra*, como el Art. 8 según enmendado por la Ley Núm. 157, *supra*, determinó que el área de la terraza, cuarto de acondicionamiento y clóset del apartamento PH no constituía automáticamente un anejo bajo los parámetros del Art. 3. Asimismo, el DACo resolvió que lo establecido en el Art. 8 en relación con la determinación de la participación sobre los elementos comunes a base del área superficial del apartamento aplicaba a la controversia presentada por la señora Trigo Margarida. En consecuencia, el 1 de noviembre de 2010 la recurrida presentó una moción de reconsideración, la cual fue denegada.

Insatisfecha con el proceder del foro administrativo, la señora Trigo Margarida recurrió al foro apelativo intermedio. Así, mediante sentencia emitida el 31 de mayo de 2011, el foro *a quo* revocó el dictamen de DACo. Este, al analizar el Art. 3 de la Ley de Condominios, concluyó que la Junta puede, en cualquier momento, cambiar el porcentaje de participación de los apartamentos comunales, pero debe contar primeramente con la aprobación unánime de los titulares.

No conteste con la decisión del Tribunal de Apelaciones, la Junta acude ante nos mediante un recurso de *certiorari* y señala los errores siguientes:

> Erró el Tribunal de Apelaciones al revocar la determinación de DACO, al concluir que la Ley Núm. 281 es aplicable al caso de autos, interpretando así que el área aquí en controversia es un "anejo" de los exceptuados del cálculo para computar el porciento de participación de los elementos comunes.

> Erró el Tribunal de Apelaciones al aplicar la Ley Núm. 281 a la controversia de autos, determinando así que se requería unanimidad para adoptar el cambio de fórmula para computar el porcentaje de participación de los apartamentos en los gastos comunales, cuando es la Ley Núm. 157 del 4 de junio del [sic] 1976 la aplicable a lo referente a la votación para dicho cambio.

Atendido el recurso de *certiorari*, el 18 de noviembre de 2011 expedimos el auto solicitado. Así pues, procedemos a resolver.

II

A

Previo al análisis de las disposiciones del esquema de propiedad horizontal que hoy debemos atender, precisa recordar que "las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produzca suficiente evidencia para derrotarlas". Batista de Nobbe v. Jta. de Dir. Del Condominio Condado Terrace, res. el 3 de abril de 2012, 2012 T.S.P.R. 63 citando a Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 395-396 (2011). Tal deferencia judicial responde a la "experiencia y al conocimiento especializado

atribuible a los organismos gubernamentales". DACo v. AFSCME, 185 D.P.R. 1 (2012).

En atención a esa deferencia, hemos establecido que al revisar una decisión administrativa el criterio rector debe ser la razonabilidad. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). Es decir, al evaluar una determinación administrativa, corresponde verificar si la agencia actuó de manera arbitraria o irrazonable, de forma que haya incurrido en un abuso de discreción. Para realizar tal análisis, resulta necesario auscultar si las determinaciones de hecho en la decisión de la agencia están sostenidas por evidencia sustancial que surja del expediente del caso. Pereira Suárez v. Jta. Dir. Cond., 182 D.P.R. 485 (2011). No obstante, las determinaciones de derecho se revisarán en toda su extensión. 3 L.P.R.A. sec. 2175.

Cabe reiterar que la presunción de corrección de las decisiones administrativas cede cuando el organismo administrativo desobedece el mandato legislativo pautado en una ley. Por tal razón, cuando una agencia interpreta un estatuto y el resultado de dicha interpretación es incompatible o contrario al propósito de la legislación aprobada, el criterio administrativo no podrá prevalecer. DACo v. AFSCME, supra.

Por otra parte, en el contexto de la exégesis de la intención legislativa compete a los tribunales dar a toda ley la interpretación que mejor adelante sus propósitos. En

este campo, es norma reiterada que "[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14. En virtud de dicho mandato, es imperativo "remitirnos al texto de la ley, pues cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa". Romero Barceló v. E.L.A., 169 D.P.R. 460, 476-77.

Igualmente, "[r]esulta necesario que en la interpretación [se armonicen], hasta donde sea posible, todas las disposiciones de la ley con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa". Matos v. Junta Examinadora, 165 D.P.R. 741, 748-749 (2005). En aras de realizar tal encomienda, las disposiciones de una ley deben ser interpretadas en conjunto, tomando en consideración todo su contexto. Romero Barceló v. E.L.A., supra. Consecuentemente, cuando se trata de una enmienda a una parte de una ley deja inalterada el resto de esta, ambos preceptos deben dilucidarse conjuntamente tratando de armonizarlas. Departamento de Hacienda v. Telefónica, 164 D.P.R. 195 (2005). Empero, en el caso de que los preceptos legales sean antagónicos, deberá prevalecer la última voluntad legislativa que es la que se expone en la ley más

reciente. Pérez Vega v. Tribunal Superior, 93 D.P.R. 749, 756 (1966).

Delimitados los contornos del principio de revisión judicial de las decisiones de organismos administrativos, así como los de la interpretación de la intención legislativa, pasemos a elaborar el marco jurídico relacionado con la Ley de Condominios que permea la controversia que hoy dilucidamos.

B

Como es sabido, en el esquema del sistema de horizontalidad, la escritura matriz constituye la "fuente vinculante más importante para los condóminos luego de la ley". M.J. Godreau, El Condominio: el régimen de propiedad horizontal en Puerto Rico, Ed. Dictum, San Juan, pág. 71. De hecho, la escritura matriz es un documento privado de relevancia tal, que una vez inscrita en el Registro de la Propiedad, gobierna a los condóminos y obliga a terceros. Sol Bravman v. Consejo de Titulares del Condominio Palma Real, 183 D.P.R. (2011); Consejo de Titulares v. Vargas, 101 D.P.R. 579 (1973). Siendo ello así, es necesario acudir a sus disposiciones en caso de cualquier conflicto relacionado con los pormenores de la administración y el manejo de los asuntos de la propiedad sometida al régimen. Sol Bravman v. Consejo de Titulares del Condominio Palma Real, supra.

Es en la escritura matriz donde se precisa el uso para el cual "será destinada toda área comprendida en el

inmueble, y una vez fijado dicho uso solo podrá ser variado mediante el consentimiento unánime de los titulares." Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291. Asimismo, la Ley de Condominios requiere que en la escritura matriz se describa cada apartamento y número con expresión de sus medidas, piezas de que conste, puerta principal de entrada, lugar con el cual inmediatamente comunique y demás datos necesarios para su identificación. Art. 22 (31 L.P.R.A. sec. 1292); Sol Bravman v. Consejo de Titulares del Condominio Palma Real, supra. A su vez, es necesario que en la escritura conste la superficie de la totalidad de los apartamentos, así como de cada apartamento individualmente, para que se fije de acuerdo con estas medidas, el porcentaje de los gastos, ganancias y derechos en los elementos comunes. Art. 23 (31 L.P.R.A. sec. 1292a).

C

Lo que constituye un área privativa a los efectos de calcular el área superficial de un apartamento para determinar, a su vez, la participación sobre los elementos comunes y establecer la cuota de mantenimiento, está regulado principalmente por lo dispuesto en los Arts. 3 y 8 de la Ley de Condominios. Empero, la delimitación del área superficial que compone el apartamento ha confundido a desarrolladores, notarios, registradores de la propiedad y el público en general. Véase Exposición de Motivos Ley Núm. 281, supra. Por tal razón, nuestra Asamblea Legislativa entendió que era necesario enmendar el Art. 3 para atender

dicha preocupación y aclarar que la medida superficial de las áreas que se asignen en la escritura matriz o en los planos de un condominio como anejos para el uso particular y exclusivo de un apartamento no deben ser incluidas para computar su área superficial ni la participación sobre los elementos comunes.

Más detalladamente y según las expresiones de nuestros legisladores, existía un desconcierto en la interpretación de cómo interaccionaban el Art. 3 y el Art. 8 de la Ley de Condominios a la hora de establecer el área superficial privada para calcular la participación sobre los elementos comunes. Sin embargo, antes de exponer las enmiendas al Art. 3 para remediar la situación que no quedó clara luego de la aprobación de la Ley de Condominios, pasemos a bosquejar la legislación que afectó primero al Art. 8.

La Ley Núm. 157, *supra*, enmendó diametralmente diversas disposiciones de la Ley Núm. 104 de 25 de junio de 1958, conocida como la Ley de Propiedad Horizontal. Particularmente, el Art. 8 fue enmendado con el propósito de variar la forma de computar la participación de los apartamentos sobre los elementos comunes del inmueble. Antes de la enmienda, ese cálculo se realizaba a base del valor de la propiedad privada. Empero, la referida ley dispuso que el criterio para determinar los porcentajes de participación sobre los elementos comunes debía realizarse a base de la superficie de los apartamentos. En relación con los inmuebles ya sometidos al régimen con anterioridad

a la vigencia de ese estatuto, se especificó en la Sección 13 de la Ley Núm. 157, *supra*, que el nuevo criterio para establecer el porcentaje de participación sobre los elementos comunes solamente sería vinculante "si así lo deciden las dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes".[10] Debemos enfatizar que el Art. 8 no fue enmendado de forma alguna por la Ley de Condominios de 2003 como tampoco fue enmendada ni derogada la salvedad y especificación que hizo el legislador en la Sección 13 de la Ley Núm. 157, *supra*. Más aún, el Art. 8, supra, no fue objeto de consideración por parte del legislador en el 2003. Un vistazo a la Ley Núm. 103, *supra*, así como al historial legislativo de esta medida lo revela.[11]

Así, en la actualidad el referido precepto establece que la participación del titular de un apartamento "en los elementos comunes del inmueble [debe ser un porcentaje] equivalente al porcentaje que represente la superficie del apartamento en la superficie de la totalidad de

---

[10] 1976, Leyes de Puerto Rico, 510.

[11] Véase el Título de la medida que dispone:
> Para enmendar el Artículo 1 y añadir un Artículo 1-A; enmendar los Artículos 2, 9, y 11; añadir un nuevo Artículo 11-A; enmendar los Artículos 13, 14; adicionar un Artículo 14-A, enmendar los Artículos 15, 15-A, 16, 17, 18, 22, 24, 25, 26, 27, 32-A, 33, 36-A, 37; adicionar el Artículo 37-A; enmendar los Artículos 38, 38-A, 38-B, 38-C, 38-D; añadir un nuevo Artículo 38-E y renumerar el Artículo 38-E como Artículo 38-F; añadir el Artículo 38-G; enmendar los Artículos 39, 41, 42, 43, 44, 47,48, 49, 50, 51; adicionar un nuevo Artículo 53 y 54 a la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como "Ley de la Propiedad Horizontal", a fin de redenominar la ley como "Ley de Condominios" y actualizarla a las realidades sociales de nuestros tiempos.

apartamentos en el inmueble. En caso de apartamientos con dos o más niveles se considerará la superficie de cada nivel". Art. 8 (31 L.P.R.A. sec. 1291f).

De otra parte, el Art. 3 previo a las enmiendas hechas por la Ley Núm. 281, *supra*, expresaba que

> se entenderá por apartamiento cualquier unidad de construcción suficiente delimitada, consistente de uno o más espacios cúbicos cerrados, parcialmente cerrados o abiertos, **con sus anejos (si algunos)**, aunque éstos no sean contiguos, siempre que tal unidad sea susceptible de cualquier tipo de aprovechamiento independiente siempre que tenga salida directa a la vía pública o a determinado espacio común que conduzca a dicha vía. (Énfasis nuestro.) 31 L.P.R.A. sec. 1291a.

En aras de describir concretamente la problemática que el legislador quiso atender al aclarar este precepto, es ineludible mencionar que, previo a las enmiendas, al describirse y definirse el concepto de "apartamento" en el Art. 3, "se inclu[ía] como parte de esta definición la palabra y el concepto "anejo", o sea, **aquellas áreas del condominio que de acuerdo con la escritura matriz y los planos correspondientes, han sido asignadas para el uso particular de un apartamento con exclusividad de los demás"**. Véase Exposición de Motivos, Ley Núm. 281, *supra*. Así pues, no estaba claro si este precepto, al ser interpretado en conjunto con el Art. 8 (31 L.P.R.A. sec. 1291f), daba pie para que todas las áreas privativas fueran incluidas dentro del cómputo de la superficie total de un apartamento para determinar la participación en los elementos comunes. Específicamente, el Art. 8 no precisaba

si el área superficial de los anejos también debía ser incluida en dicho cómputo. Íd. No obstante, a pesar de que el Art. 8 no fue enmendado por la Ley Núm. 281, *supra*, quedó plasmado que la intención de la Asamblea Legislativa fue que el Art. 8 se interpretara de conformidad a lo enmendado en el Art. 3 sobre cuáles espacios privados deben incluirse en el área superficial del apartamento.

Así pues, en torno a la confusión de si los anejos serían incluidos en el cómputo del área superficial para determinar la participación de los apartamentos de los elementos comunes, el legislador optó por permitir a los titulares de los condominios hacer dicha determinación. Como resultado, el Art. 3 fue enmendado para que leyera como sigue:

> La medida superficial de aquellas áreas que sean asignadas en la escritura matriz y/o planos constitutivos de un condominio **como anejo de un apartamiento para su uso particular y con exclusión de los demás apartamentos, no será incluida para computar el área superficial del apartamiento en cuestión ni su por ciento de participación en los elementos comunes del inmueble, a menos que el titular único de todos los apartamientos, o de haber más de un titular, todos los titulares por unanimidad, en la escritura matriz original para la constitución del régimen ya existente, dispongan expresamente lo contrario para uno o mas anejos,** en cuyo caso, sólo se tomarán en consideración para dichos propósitos aquellos anejos que así se especifiquen en la escritura matriz original o los documentos para enmendar un régimen de propiedad horizontal existente. (31 L.P.R.A. sec. 1291a).[12]

---

[12] Precisa mencionar que este artículo se volvió a enmendar, esta vez por la Ley Núm. 17-2012, 31 L.P.R.A. sec. 1291a., conocida como la "Ley para Propiciar y Flexibilizar el Desarrollo de Vivienda bajo el Régimen de Propiedad Horizontal". La parte previamente citada del artículo no se afectó por esta enmienda. No obstante, para propósitos

Cabe señalar que durante el proceso legislativo que culminó en la aprobación de la Ley Núm. 281, *supra*, el DACo emitió expresiones que nos permiten indagar sobre la problemática que la Asamblea Legislativa quiso atender mediante la mencionada pieza legislativa. En particular, esta agencia comentó que la "confusión" de los sectores involucrados en el desarrollo y constitución de inmuebles al régimen de horizontalidad que la Asamblea Legislativa quiso disipar, se debía al hecho de la incorrecta determinación y clasificación de los "anejos". De esa forma, se creaba más de un porciento de participación, basado en un área superficial incorrecta, prestándose así para confusión al momento de determinar las aportaciones de los titulares para el mantenimiento. Véase, Ponencia DACo sobre P. de la C. 3454, pág. 4. Asimismo, el DACo puntualizó que las disposiciones de la Ley no eran ambiguas, sino que el problema de la confusión era causado por el desconocimiento y la imprecisión de los

---

ilustrativos citamos la fracción del Art. 3 enmendada según lee en la actualidad:

> A los efectos de esta Ley, se entenderá por "apartamiento" cualquier unidad de construcción en un inmueble sometido al régimen establecido en esta Ley, que se encuentre suficientemente delimitada y que consista de uno o más espacios cúbicos total o parcialmente cerrados o abiertos, conjuntamente con sus anejos, si alguno, aunque estos no sean contiguos, siempre que tal unidad sea susceptible de cualquier tipo de aprovechamiento independiente y tenga salida directa a la vía pública o a determinada área privada (ya sea ésta un elemento común del condominio, o un área compartida por dos o más condominios u otros desarrollos, o un área privada que exista y/o haya sido designada como acceso para dos o más condominios u otras áreas de desarrollo residencial, comercial, mixta o de cualquier otro tipo), que eventualmente conduzca a una vía pública mediante una servidumbre de paso u otro mecanismo legal, según lo anterior sea aprobado por las entidades públicas o cuasi-públicas con jurisdicción. La medida superficial de aquellas áreas…" 31 L.P.R.A. sec. 1291a.

desarrolladores y notarios en la redacción o preparación de los documentos constitutivos del Régimen de Propiedad Horizontal. Para ilustrar su contención, la agencia señaló que con gran frecuencia encontraba escrituras de constitución del régimen, donde un apartamento se le otorgaba el uso y derecho exclusivo de un área del condominio, catalogando dicha área como un elemento común limitado, en vez de catalogarla expresamente como un anejo. Íd. pág. 5.

D

Observamos pues, que la designación de un área como anejo puede ser inexacta, ya sea por falta de conocimiento o precisión al redactar la descripción de un apartamento. Por esa razón, a los efectos de identificar si un área es un anejo, es imperativo profundizar sobre cómo este concepto ha sido atendido en el campo del derecho de propiedad horizontal.

Ante el desacierto en la catalogación de estas áreas en la escritura matriz, primeramente debemos indicar que en la Exposición de Motivos de la Ley Núm. 281, *supra*, los miembros de la Asamblea Legislativa expresaron que "[g]eneralmente, los anejos de un apartamento consisten en áreas de estacionamiento, patios o azoteas, que son expresamente asignadas **para su uso exclusivo, particular y privado**". (Énfasis nuestro.) Íd.

De lo antes enunciado, se puede colegir que aunque forme parte del régimen jurídico del apartamento, el anejo

no es el apartamento mismo por propia definición. E. Vázquez Bote, Tratado práctico y crítico de derecho privado puertorriqueño: Derechos Reales, San Juan, Ed. Butterworth, Tomo VIII, pág. 141. Ello se desprende del Art. 3 que define qué es el apartamento al conceptuarlo "como [un] espacio cúbico determinado y *sus anejos*" como base privativa fundamental. (Bastardillas en el original) Íd. 140. Explica Vázquez Bote, que al idear la figura del anejo el legislador pretendió que tanto el apartamento y como "*otras partes privativas* queda[rán] sometidas al mismo régimen de exclusividad". (Bastardillas en el original) Íd. En consecuencia, matiza que es adecuado "diferenciar, dentro de las partes privativas, el apartamento *stricto sensu*, de los anejos, sometidos al mismo régimen jurídico que aquel (la exclusividad legal)." Íd.

A esta tarea no abona el que la Ley de Condominios esté ausente de una enumeración de los criterios para la determinación de los anejos. Solamente contamos con lo expuesto en el Art. 3 y la lista provista en la Exposición de Motivos de la Ley Núm. 281, *supra*, en la que el legislador dispuso una serie de elementos susceptibles de ser anejos del apartamento; entre ellos, las áreas de estacionamiento, patios o azoteas. Lo determinante, o el criterio rector para esta determinación según expuesto en ese texto, es que sea un área susceptible de aprovechamiento independiente asignada para el uso exclusivo, particular y privado de un apartamento. Esto,

claro está, debe interpretarse en conjunto con lo dispuesto en el Art. 11 de la Ley de Condominios (31 L.P.R.A. sec. 1291i) que abordaremos más adelante, el cual establece los elementos comunes que son susceptibles de convertirse en áreas de propiedad privada a favor de un titular.

Sin embargo, a modo comparativo es meritorio apuntar que la concepción del anejo como área privativa y accesoria al apartamento a la que aludimos antes, se refuerza con la visión enmarcada en el Art. 3.1a de la Ley de Propiedad española (LPH). Esta disposición reconoce que "el derecho singular y exclusivo de propiedad no solo se proyecta sobre el [apartamento] principal sino que alcanza los anejos". J.J. Díaz Núñez y L.A. González Martín (Eds.) Propiedad Horizontal, Consejo General del Poder Judicial, 2008, T.I, pág. 109. Específicamente, esta disposición de la LPH se refiere a los anejos como áreas "que expresamente hayan sido señalad[as] en el título, aunque se hallen situados fuera del espacio delimitado". Íd., pág. 279. Por ello, comentaristas indican que para que los anejos no sean confundidos con los elementos comunes, estos deben ser expresamente señalados como de propiedad separada. Íd., pág. 280. Es decir, si no se especifica el área como anejo en el título constitutivo del régimen, esta se catalogaría como elemento común.

En consideración a lo anterior, cabe exponer que el anejo es "un espacio suficientemente delimitado y susceptible de aprovechamiento independiente que está en

relación de accesoriedad respecto a un [a]partamento ordinario y por razón de esa accesoriedad **no tiene cuota ni abre folio registral y es de propiedad del departamento principal**"; ello, aunque se halle separado del elemento privativo principal. (Énfasis nuestro.) Propiedad Horizontal, Consejo General del Poder Judicial, op. cit. pág. 110. Conforme a lo bosquejado, podemos describir al anejo como un área de derecho singular y exclusivo, accesoria a un elemento privativo. Después de todo, no podemos olvidar que la definición de "anejo" según el Diccionario de la Real Academia Española es algo "unido, agregado, dependiente o accesorio". A esos efectos, el Art. 5 de la LPH española señala una lista de posibles anejos, entre ellos, los garajes, las buhardillas o el sótano. Empero, esta enumeración no es taxativa, por cuanto un elemento no incluido en ella puede ser anejo y viceversa. Propiedad Horizontal, Consejo General del Poder Judicial, op cit. pág. 110.[13]

Cónsono con lo expuesto, en la doctrina pertinente a la propiedad horizontal española se ha perfilado que el concepto del anejo cuenta con las siguientes características:

---

[13] Es necesario mencionar que el Art. 396 del Código Civil español prescribe que los elementos comunes son anejo inseparable de la parte denominada privativa. Sin embargo, la utilización del término del anejo en ese contexto ha sido criticada por ser "desafortunada". Propiedad Horizontal, Consejo General del Poder Judicial, op. cit. pág. 281; Véase además, M. Marcos Jiménez, Elementos comunes, procomunales y anejos: caracteres diferenciales y disposición de los mismos, Rev. Crít. Der. Inm., pág. 138 Núm. 518 (1977). Por ello, dicha alusión debe ser entendida no en su sentido técnico, sino en su sentido gramatical, pues los elementos comunes tienen una relación accesoria y de servicio con las áreas privativas. Íd.

1) Son espacios delimitados susceptibles de aprovechamiento independiente.
2) Son accesorios del elemento o apartamento privativo a cuyo fin sirven, formando parte integrante no esencial del mismo.
3) Han de determinarse expresamente en el título constitutivo como tales, pues en caso contrario se considerarán elementos comunes. En el mismo título se señalará el piso o local del que son accesorios, bastando una simple referencia y no siendo necesaria, aunque sí conveniente su descripción total.
4) No tienen cuota especial de participación en los elementos comunes por aprovecharles las del elemento privativo base.
5) Deben tener acceso independiente desde algún elemento común o desde la vía pública.
6) Se inscriben en el mismo folio y número del apartamento privativo base. M. Marcos Jiménez, _Elementos comunes, procomunales y anejos: caracteres diferenciales y disposición de los mismos_, Rev. Crít. Der. Inm., pág. 138 Núm. 518 (1977).

E

Ahora bien, según mencionáramos, los anejos no han sido especificados ni descritos de forma abarcadora ni acotada en nuestra Ley de Condominios. Por esa razón, la conceptualización de esta figura, así como la identificación de ciertos elementos como anejo, puede resultar en imprecisiones y confusiones si no se tiene presente la voluntad legislativa y la doctrina aplicable en armonía con el resto de los preceptos aplicables al régimen de propiedad horizontal. A esos extremos, resulta conveniente abundar sobre la figura de los elementos comunes. Recordemos pues, que en el régimen de propiedad horizontal, "el bien común sirve para el disfrute adecuado de lo privado". _Consejo de Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez_, 2012 T.S.P.R.__. Por consiguiente, en

el esquema de la horizontalidad se establece "un dominio exclusivo de un bien inmueble, el cual coexiste con un condominio forzoso e inseparable de los elementos comunes". Íd., citando a Bravman, González v. Consejo de Titulares, supra, pág., 14.

A tales efectos, la Ley de Condominios denomina las áreas de un inmueble que serán elementos comunes generales. Art. 11 de la Ley de Condominios, 31 L.P.R.A. 1291i (en adelante, Art. 11). Este precepto legal clasifica a los elementos comunes en generales "necesarios" o "voluntarios". Consejo de Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez, supra. Ello, "en atención al grado de indispensabilidad que tiene el elemento para el adecuado disfrute de las unidades privadas". Íd. A su vez, los elementos comunes limitados se clasifican como aquellos que están destinados al uso exclusivo de cierto número de apartamentos. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291j.

Por su parte, es preciso mencionar que los elementos comunes necesarios son aquellos sin los que "resultaría inasequible el adecuado disfrute de los apartamentos". Consejo de Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez, supra; Cestero Aguilar v. Jta. Dir. Condominio, 184 D.P.R. 1, 11 (2011). Consecuentemente, "estos quedan reservados para el uso de la totalidad de los condóminos y no podrán ser susceptibles de enajenación o propiedad exclusiva de alguno o varios titulares". Consejo de

Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez, supra.

En armonía con lo anterior, los elementos voluntarios con aquellos que "no son imprescindibles para el adecuado disfrute de la propiedad individual y, en consecuencia, pueden ser atribuidos a uno o varios titulares en específico". Consejo de Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez, supra. No obstante, esa adjudicación debe realizarse en la escritura matriz del condominio. A su vez, cuando esa transferencia o conversión se realice luego de la constitución del régimen, debe mediar el consentimiento unánime de todos los titulares. Art. 11, Ley de Condominios, supra. Consejo de Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez, supra.

Específicamente, el inciso b del Art. 11 de la Ley de Condominios enumera los siguientes elementos como comunes voluntarios:

1. El terreno, los sótanos, azoteas, patios y jardines.
2. Los locales destinados a alojamiento de porteros o encargados.
3. Las áreas destinadas a estacionamiento.
4. Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes. 31 L.P.R.A. 1291i.

Vemos pues, que la azotea se clasifica como **un elemento general voluntario**. Art. 11 de la Ley de Condominios, supra. En particular, esta área se define como la cubierta de un edificio cuya "configuración permite su utilización como terraza o superficie por la cual se puede andar, es

decir, es susceptible de utilización como si fuera otro piso". Godreau, El condominio: el régimen de la propiedad horizontal en Puerto Rico, Ed. Dictum, 1992, pág. 96. Véase, Consejo de Titulares v. Vargas, 101 D.P.R. 579, 583 (1973). En consideración a ello, hemos establecido que la azotea, por "ser un elemento general voluntario, puede ser para el uso exclusivo de uno o algunos titulares". Consejo de Titulares Cond. Torre Miramar v. Edwin Ramos Vázquez, supra.

Habiendo discutido las enmiendas pertinentes al Art. 3 de la Ley de Condominios y su interacción con el Art. 8 y el Art. 11 de dicho estatuto, así como el marco jurídico conceptual aplicable a la figura del anejo, nos corresponde determinar si parte de la azotea del Condominio de la controversia de autos debe ser incluida en el cómputo del área superficial del apartamento PH.

III

Con el propósito de resolver adecuadamente la controversia que se nos plantea, atendemos en primer lugar el segundo error del recurso de certiorari. En este, la Junta esboza que el foro apelativo intermedio incidió porque determinó que, conforme a la Ley Núm. 281, supra, era necesario el voto unánime de los titulares para adoptar el cambio de fórmula para computar el porcentaje de participación de los apartamentos en los gastos comunes. Expresa la Junta que la Ley Núm. 157, supra, aplica en lo referente a los requisitos de votación para dicho cambio y

que, por ende, solo se necesitaba el voto de dos terceras partes de los titulares. Determinamos que le asiste la razón en torno a que para realizar el cambio del criterio de porcentaje de participación de los elementos comunes se requería un voto de dos terceras partes de los titulares. Ahora bien, debemos aclarar que la controversia que hoy resolvemos no se trata sobre si aplicaba la Ley Núm. 157, *supra* -con su criterio de dos terceras partes para el cambio de cómputo- en vez de la Ley Núm. 281, *supra*, como plantea la Junta del condominio El Campeador en su segundo error. Esto pues, según explicamos, los citados preceptos valoran aspectos particulares y distintos sobre el cómputo de los porcentajes de participación, que en el caso de autos deben ser considerados armónicamente. No obstante, pasamos a atender el segundo error. Veamos.

Según expusimos en nuestra discusión, la Ley Núm. 157, modificó a grandes rasgos la Ley Núm. 104 de 25 de junio de 1958, conocida como la Ley de Propiedad Horizontal. Esa legislación enmendó el Art. 8 a los fines de establecer que el porciento de participación de los apartamentos sobre los elementos comunes debe ser calculado a base de la superficie de los apartamentos.

Es preciso enfatizar que en el segundo párrafo de la sección 13 de la Ley Núm. 157, *supra*, se dispuso que las comunidades de titulares tendrían el plazo de un año para adaptar las escrituras de constitución al régimen y reglamentos de los inmuebles, y que, transcurrido dicho

término, estos no podrían ser aplicados en contradicción a lo establecido en dicho estatuto. No obstante, luego de así disponer, el legislador estatuyó que las enmiendas del Art. 8 solo serían vinculantes para los inmuebles ya sometidos al régimen de propiedad horizontal antes de la vigencia de dicha ley "si así lo deciden dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes".[14] Es decir, el legislador excluyó taxativamente a estos titulares de la responsabilidad de adecuar su porcentaje de participación sobre los elementos comunes al criterio de superficie, a no ser que así decidieran hacerlo mediante el voto de dos terceras partes.

De un análisis de la Ley de Condominios podemos deducir que el legislador no enmendó ni analizó en el 2003 las disposiciones del Art. 8 según quedó enmendado por la Ley Núm. 157, *supra*. En atención a ello, tenemos que concluir que la salvedad que incluyó el legislador en la Sección 13 de la Ley Núm. 157, *supra*, con relación al Art. 8, dirigida específicamente a los condominios adscritos al régimen con anterioridad a la vigencia de dicho estatuto, no quedó derogada ni enmendada por la aprobación de la Ley de Condominios en el 2003. Por tanto, la retroactividad de la Ley de Condominios, en nada afecta lo dispuesto en el

---

[14] 1976 Leyes de Puerto Rico 510.

Art. 8 ni la excepción pautada por el legislador en la sección 13 de la Ley Núm. 157, *supra*.[15]

En vista de lo anterior, cuando en un condominio -que se constituyó bajo el régimen de propiedad horizontal previo a la vigencia de la Ley Núm. 157, supra- aún se computa la participación en los elementos comunes a base del valor de la propiedad, y sus titulares deciden variar el criterio de dicho cálculo al de superficie, estos deben hacerlo mediante una votación de dos terceras partes de los titulares que a su vez representen las dos terceras partes del valor en los elementos comunes. En consecuencia, determinamos primeramente que el cambio del cómputo del porcentaje de participación sobre los elementos comunes de estos condominios debe realizarse de conformidad a lo establecido por la sección 13 de la Ley Núm. 157, *supra*.

Pautamos que es así, pues en 1976 el legislador dejó en manos de los titulares de los condominios ya adheridos al régimen hasta ese momento, la decisión de si cambiaban el criterio del porcentaje de participación sobre los elementos comunes. Por consiguiente, no podemos descartar que existan condominios afectados por la Ley Núm. 157,

---

[15] En Consejo de Titulares v. Williams Hospitality, 168 D.P.R. 101 (2006) al analizar el Art. 44 de la Ley de Condominios, 2003 Leyes de Puerto Rico 355, 410, pautamos que el momento jurídico en que el inmueble fue sometido al régimen no da lugar a distinción alguna en cuanto a la aplicación de la ley. Así, determinamos que conforme a la intención legislativa expuesta en el trámite de aprobación de la Ley de Condominios, *supra*, esta era de aplicación retroactiva, pues solo de esa forma se aseguraría que se cumpliera el propósito del legislador. No obstante, en lo que concierne al caso de autos y según expusimos en el texto de nuestra ponencia, el Art. 8 no fue objeto de análisis por el legislador en el 2003. Por tanto, sería arbitrario e injustificado concluir que lo que el legislador estatuyó en la Ley Núm. 157 de 4 de junio de 1976 con relación a la aplicación de la enmienda del Art. 8, fue trastocado por la Ley de Condominios, *supra*.

*supra*, que aún computan la participación en los elementos comunes a base del criterio de valor de la propiedad; ya sea porque no han celebrado una asamblea para modificar la fórmula o, ya celebrada, no consiguieron los votos necesarios que estableció la citada norma para la modificación. Precisamente ese es el caso del Condominio del caso de autos, el cual se sometió al régimen de propiedad el 16 de junio de 1972 y no fue hasta el 2 de diciembre de 2009 que sus titulares celebraron una asamblea para auscultar la posibilidad de variar el criterio del cómputo de la participación en los elementos comunes de valor de la propiedad a superficie.

Cónsono con lo expuesto, al evaluar el cambio en la fórmula de la cuota de mantenimiento del caso de autos, tenemos que concluir que ello se hizo conforme a los requisitos estatutarios aplicables. Esa modificación se aprobó por el 87.5795% de los titulares, lo cual evidentemente excede el voto de dos terceras partes requeridos en la Ley Núm. 157, *supra*.

Ahora bien, resuelto que podía hacerse el cambio del cómputo de participación conforme al criterio de medida superficial, nos corresponde resolver la aplicabilidad de la Ley Núm. 281, *supra*, la cual precisó que dentro de la medida superficial del apartamento como regla general no se contemplará el anejo. En torno a este extremo, en su primer planteamiento de error, la Junta expone que el Tribunal de Apelaciones erró al concluir que la Ley Núm. 281, *supra*, es

CC-2011-0639

aplicable al caso de autos. Asimismo, dice que erró el foro *a quo* al interpretar que el área de la azotea del apartamento PH es un anejo.

Particularmente, la Junta del Condominio plantea que como parte de la superficie de la azotea es un área privativa del apartamento PH, esta debe incluirse en el área total privada de esa propiedad.[16] Asimismo, arguye que la azotea no forma parte de los "anejos" atendidos en la Ley Núm. 281, *supra*, previamente reseñada. No le asiste la razón. Veamos.

La escritura matriz del Condominio El Campeador describe al apartamento PH como sigue:

De forma irregular localizado en las duodécima y decimotercera plantas del edificio El Campeador" en San Juan, Puerto Rico, con un área total privada de siete mil seiscientos cincuenta y cuatro pies cuadrados (7,654), equivalentes a setecientos once metros cuadrados con treinta y cinco centésimas de otro (711.35), midiendo cuarenta y tres pies cinco pulgadas en su mayor ancho por ciento seis pies ocho pulgadas en su mayor longitud. Consta en la planta duodécima de terraza, family room, comedor, sala, cocina completamente equipada, cuarto de lavado, despensa, cuatro dormitorios con sus closets, vestidor, cinco baños, área de barra, foyer y estudio. **Consta en la planta décimo tercera de terraza y cuarto para acondicionamiento de aire.**
……..
El área comprendida por una distancia de cuatro pies lineales hacia el Norte medidos de las paredes Este y cuatro pies lineales hacia el Norte medidos de las paredes Este y Norte respectivamente de la escalera y cuarto de máquinas en la planta decimotercera, será un área común limitada a través de la cual siempre tendrán acceso aquellas personas empleadas para reparar o darle mantenimiento a los ascensores

---

[16] Alegato de la peticionaria, pág. 5.

del edificio y el incinerador. (Énfasis nuestro.) Apéndice del recurso, págs. 144-145.[17]

En la séptima parte de la escritura matriz sobre elementos generales, específicamente en su sección cuarta se identifica como tal el área:

> (E) En la decimotercera planta escalera de acceso al cuarto de máquinas y cuarto de máquinas de dos plantas de altura, incluyendo su techo, con área de mil sesenta y dos punto ochenta y dos pies cuadrados, equivalentes a noventa y ocho punto sesenta y ocho metros cuadrados. Apéndice del recurso, pág. 164.

Asimismo, la escritura matriz define y detalla el área de la azotea del Condominio la cual describe como sigue:

> CUARTO: DESCRIPCIÓN DEL EDIFICIO CON EXPRESIÓN DE SUS ÁREAS Y MATERIALES DE CONSTRUCCIÓN.
> El edificio tiene una azotea conteniendo dos pozos de ascensores, una escalera, un cuarto de máquinas de aire acondicionado, un closet, cámara reasentamiento del incinerador, escalera de acceso al cuarto de máquinas, azotea del cuarto de máquinas todo ello un área de cinco mil ciento noventa y uno pies cuadrados con ochenta y cuatro centésimas de otro (5,191.84)….Apéndice del recurso, pág. 94.

En la sección octava de la escritura titulada "ELEMENTOS COMUNES LIMITADOS" en la cuarta parte se indica como tal al

> [p]asillo en la azotea con un área de ciento setenta y cinco punto cincuenta y un pies cuadrados, equivalentes a dieciséis punto treinta y un metros cuadrados, para accesibilidad a la escalera y cuarto de máquina en la planta decimotercera, para efectuar trabajos de reparación o de mantenimiento en los ascensores del edificio e incinerador. Apéndice del recurso, pág. 167.

Más adelante, en la sección "Duodécimo" de la escritura matriz en su párrafo número dos expresa que:

---

[17] Similar descripción se hace en la escritura de compraventa del apartamento. Apéndice del recurso, pág. 24.

La azotea perteneciente al apartamento residencial PH podrá ser cercada y cubierta total o parcialmente con la aprobación del arquitecto del edificio, y de tal manera que no resulta afectada la seguridad, estética y forma actual de las fachadas exteriores del edificio, así como de que no impida el libre acceso al cuarto de máquinas e incinerador según dispuesto anteriormente. Apéndice del recurso, pág. 177.

Se desprende claramente del citado texto que parte de la azotea del Condominio según descrita en la escritura es un anejo perteneciente al apartamento PH. Ello pues, es un elemento privado que guarda una relación de accesoriedad con el apartamento principal. Además, según podemos apreciar de las citadas partes de la escritura matriz, el área destinada al apartamento PH constituye un espacio delimitado susceptible de aprovechamiento independiente. Al estar ubicado en la azotea, se tiene acceso independiente desde un elemento común.

Concluido que el área en controversia es un anejo del apartamento PH, queda por determinar si correspondía incluir dicha área en la medida superficial del apartamento para calcular el porcentaje de participación de esa propiedad sobre los elementos comunes. Ello a la luz de la interacción entre el Art. 3 y el Art. 8.

Para propósitos aclaratorios, debemos puntualizar que en el presente caso los titulares decidieron hacer dos cambios regulados por enmiendas y disposiciones particulares que son distintas entre sí, utilizando un solo trámite de votación. Lo cierto es que para cambiar el cómputo de los porcentajes de participación, los titulares del Condominio debían contar con el voto de la mayoría de

dos terceras partes de los titulares que a su vez representaran dos terceras partes del valor en los elementos comunes. Así lo hicieron y, según aquilatamos, dicho cambio fue conforme a derecho. Ahora bien, con ese mismo porciento de votos no se podía aprobar que en la medida superficial del apartamento PH se contabilizara el área de la azotea; lo cual resultó en un aumento en la cuota de mantenimiento de $699 a $1,370 para el inmueble.

Según indicamos anteriormente, la Ley Núm. 281, *supra*, enmendó la Ley de Condominios para aclarar la falta de precisión del Art. 8 sobre cómo se computaría la participación de los apartamentos sobre los elementos comunes. Concretamente, la referida enmienda puntualizó que la superficie de los anejos que formen parte del apartamento no tomará en consideración al momento de computar el porciento de participación sobre los elementos comunes. Art. 3, *supra*. Asimismo, se dispuso que en la eventualidad de que los titulares deseen que los anejos se incluyan en dicho cálculo, ello debe acordarse unánimemente, especificando qué anejos serán tomados en consideración. Íd.

La Ley Núm. 281, *supra*, era la legislación vigente al momento del cambio que realizaron los titulares del Condominio El Campeador. ¿Correspondía entonces incluir los anejos en la medida superficial cuando la norma general vigente dicta lo contrario? Resolvemos que no. No hay razón para aplicar las disposiciones del Art. 8 sin tomar en

cuenta su posterior aclaración por medio de la enmienda al Art. 3, *supra*, en el 2008. Somos del criterio que la ley vigente sostiene, sin lugar a dudas, nuestra interpretación. Ello pues, cuando se realizó el cambio del porciento de participación de los elementos comunes, ya estaba vigente la Ley Núm. 281. En consecuencia, si los titulares del Condominio El Campeador deseaban incluir al cómputo de la medida superficial los anejos de los apartamentos (de conformidad con el vigente Art. 3 de la Ley de Condominios, supra) es necesario que hubiese **unanimidad** de los titulares para así proceder. Correspondía entonces realizar una votación independiente de la primera para realizar este cambio.

Ciertamente, el Consejo ignoró el mandato de ley estatuido en el Art. 3 con relación a qué debe incluirse en la superficie del apartamento, específicamente, para propósitos del cómputo de dicha cuota. Por esa razón, es obligatorio concluir que a la luz del derecho aplicable, esa enmienda a la cuota de mantenimiento era improcedente. Esto así, pues en el presente caso la parte de la azotea es un anejo del apartamento PH según descrito. Consiguientemente, la azotea no debió ser incluida en el área superficial del apartamento en cuestión, contando solamente con el voto del 87.5795% de los titulares. En

virtud del propio Art. 3, para realizar tal cambio era imperativo el voto unánime de todos los titulares.[18]

A este punto, es pertinente hacer hincapié en que es errada la postura esbozada por el Juez Presidente señor Hernández Denton en su Opinión Disidente, de que las enmiendas realizadas en el 2008 por la Ley Núm. 281, *supra*, al Art. 3 de la Ley de Condominios, *supra*, se pueden aplicar únicamente a los inmuebles sometidos al régimen de propiedad horizontal con posterioridad a la vigencia de esa ley. Aclaramos que la aplicabilidad de la ley no está sujeta al momento en que se somete un inmueble al régimen. Consideramos hoy el momento en que los titulares del Condominio decidieron modificar el criterio de cómputo de su participación sobre los elementos comunes. No cabe hablar entonces de la aplicación de la ley retroactivamente.

Por consiguiente, es equivocada la afirmación de que el efecto de nuestra decisión es que todos aquellos condominios que a partir de 2003 calcularon la participación de los elementos comunes sobre el área superficial incluyendo los anejos, en cumplimiento de la

---

[18] Recordemos que el Art. 38C(d) de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-3, dicta que "[c]uando todos los titulares presentes en una reunión convocada para tomar un acuerdo que requiera unanimidad, adoptasen dicho acuerdo, aquellos que debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a partir de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad". Cabe señalar que del legajo de autos no se desprende evidencia alguna de que las notificaciones sobre lo decidido en la asamblea del 2 de diciembre de 2009 fueron debidamente enviadas a los titulares ausentes.

ley, tengan que devolver el dinero pagado en exceso por aquellos titulares que tengan un anejo para su uso exclusivo.

Al aprobar la Ley Núm. 281, *supra*, el legislador precisó que los anejos -como regla general- no deben ser incluidos en el cómputo de la medida superficial de los apartamentos. Así, expresó y aclaró cuál fue su intención original en la Ley de Condominios de 2003, de manera tal que dejó en manos de los propios titulares el determinar si el área del anejo debe incluirse en dicho cómputo. Opinamos, que el efecto que esta aclaración legislativa acarrea, es mantener lo dispuesto en las escrituras matrices otorgadas con anterioridad a la aprobación de la Ley Núm. 281, *supra*. No obstante, se reconoce a los titulares la potestad de establecer un porciento distinto que incluya los anejos, si ello se logra mediante un consenso unánime. Es decir, si la escritura matriz dispone que el anejo se incluya en la medida superficial del apartamento para propósitos del cálculo del porciento de participación, o si no lo hace, el legislador ha validado tales acciones. En consecuencia, el documento público regirá el asunto hasta que los titulares decidan -conforme a la ley- cambiarlo.

De otra parte, la disidencia afirma que en virtud de la retroactividad dispuesta en el Art. 44 de la Ley de Condominios de 2003, para este momento todos los inmuebles sometidos al régimen de propiedad horizontal tienen que

utilizar la fórmula de superficie para el cálculo de participación en los elementos comunes. Tal aseveración es contraria al estado de derecho. Como señaláramos, el Art. 8 no fue objeto de enmiendas en el 2003. Consecuentemente, opinamos que la conclusión de la disidencia de que a partir del 2003 "todos los condominios debían ajustar sus escrituras y reglamentos para cumplir cabalmente con las disposiciones de la Ley del 2003, incluyendo computar sus participaciones sobre los elementos comunes utilizando el área superficial", Opinión Disidente, pág. 6, trastoca la estabilidad de aquellos condominios que, amparados en la Sección 13 de la Ley Núm. 157, *supra*, celebraron una asamblea y mediante votación decidieron mantener el criterio de precio para calcular la participación en los elementos comunes. Incluso, ignora el impacto económico que puede tener la derogación de la salvedad que hizo la Sección 13 de la Ley Núm. 157, *supra*. Esto es, que todos los condominios sometidos al régimen antes de la vigencia de la Ley Núm. 157, *supra*, que aun computan la participación sobre los elementos comunes a base del precio, tengan que hacerlo ahora a base de la superficie sin pasar por el cedazo de la votación de dos terceras partes de los titulares. Esta legislación judicial crearía, sin lugar a dudas, "innumerables … consecuencias negativas… sobre el estado de derecho vigente en el tema de propiedad horizontal". Opinión disidente, pág. 12.

Cónsono con lo anterior y recapitulando, en el caso de autos estamos ante un anejo del apartamento de la señora Trigo Margarida. La peculiaridad de esta controversia es que en el régimen del Condominio aun se disponía el porciento de participación sobre los elementos comunes a base del valor de la propiedad. Sin embargo, en el 2009 los titulares optaron por cambiar ese enfoque al del área superficial. En ese contexto y conforme al derecho aplicable, resolvemos que se necesitaba la votación de dos terceras partes de los titulares para variar el criterio de dicho cálculo al de medida superficial. Asimismo, resolvemos que el anejo no puede ser incluido en el cómputo de la medida superficial del apartamento de la señora Trigo Margarida. Esto pues, no se cumplió con el requisito de unanimidad para así proceder, conforme a la voluntad legislativa decretada en la Ley Núm. 281, *supra*.

En consideración a lo antes expuesto, si bien las agencias administrativas merecen deferencia en sus dictámenes, concluimos que en el caso de autos el DACo cometió un craso error de derecho al validar el cambio en la fórmula de la cuota de mantenimiento del Condominio. Particularmente, esta agencia incidió al no evaluar las disposiciones del Art. 3 en conjunto con el Art. 8 y al determinar que la azotea no era un anejo. Así pues, erró al concluir que dicho elemento debía ser incluido en la fórmula del área superficial del apartamento PH.

En ese sentido, la azotea como elemento puede ser privado, común general o incluso elemento común limitado según establece el Art. 11b de la Ley de Condominios. Empero, a la luz de las enmiendas realizadas por la Ley Núm. 281, *supra*, al Art. 3, es forzoso concluir que una vez ese elemento se identifica con las características de un anejo perteneciente a un apartamento, el mismo puede ser incluido en el cálculo de la cuota de mantenimiento con el consentimiento unánime de los titulares.

Reiteramos pues, que en el caso de autos, la parte de la azotea en cuestión, por ser un anejo, no podía ser incluida en el área superficial del apartamento a los efectos de calcular la cuota de mantenimiento. Claro está, no existe impedimento para que la Junta pueda convocar otra asamblea para aprobar el cambio en la fórmula de porcentaje de participación. No obstante, advertimos que para así hacerlo, tiene que contar esta vez con el voto unánime de todos los titulares.

IV

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones que a su vez, revocó la resolución del DACo que validó el aumento de la cuota de mantenimiento del apartamento de la señora Trigo Margarida. La parte de la azotea perteneciente al apartamento PH es un anejo de esa propiedad. Por lo tanto, no puede ser incluida en el cómputo para determinar la participación del apartamento sobre los elementos comunes.

CC-2011-0639

En consecuencia, se devuelve al DACo para que realice el cómputo del porcentaje de participación del apartamento PH sobre los elementos comunes conforme a lo aquí pautado.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sylvia Trigo Margarida
        Recurrida

        v.

Junta de Directores
Condominio El Campeador
        Peticionaria

Certiorari

CC-2011-0639

SENTENCIA

En San Juan, Puerto Rico, a 28 de noviembre de 2012.

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones que a su vez revocó la resolución del DACo que validó el aumento de la cuota de mantenimiento del apartamento de la señora Trigo Margarida. Resolvemos que la parte de la azotea perteneciente al apartamento PH es un anejo de esa propiedad. En consecuencia, no puede ser incluida en el cómputo para determinar la participación del apartamento sobre los elementos comunes. Por lo tanto, se devuelve al DACo para que realice el cómputo del porcentaje de participación del apartamento PH sobre los elementos comunes conforme a lo aquí pautado.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con opinión escrita. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Aida Ileana Oquendo Gralau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sylvia Trigo Margarida

    Recurrida

        v.                        CC-2011-639      Certiorari

Junta de Directores del
Condominio El Campeador

    Peticionarios

Opinión Disidente emitida por el Juez Presidente señor HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 28 de noviembre de 2012.

En esta ocasión nos vemos obligados a disentir de lo resuelto por una mayoría de este Tribunal, principalmente, por entender que la Ley Núm. 281 del 15 de agosto de 2008 (Enmienda del 2008) es de aplicación prospectiva. Así las cosas, entendemos que la definición sobre apartamento establecida en el Artículo 3 de la Ley de Condominios de 2003, 31 L.P.R.A. 1291a, es la que aplica a la controversia ante nos y no la Enmienda del 2008 como concluye la Opinión del Tribunal. Como consecuencia, revocaríamos la Sentencia del Tribunal de Apelaciones y desestimaríamos la querella presentada por la Sra. Sylvia Trigo Margarida. Por lo tanto, el área superficial de la azotea, anejo de su apartamento,

CC-2011-0639

quedaría incluida al computar su participación sobre los elementos comunes del inmueble.

## I.

Entendemos que la Opinión mayoritaria describe adecuadamente los hechos que originan la controversia de autos, por lo que es innecesario reseñarlos nuevamente. Aun así, cabe destacar tres hechos importantes. En primer lugar, el Condominio El Campeador fue constituido bajo el régimen de propiedad horizontal en 1972. La cuota de participación sobre los elementos comunes se calculó a base del valor de la propiedad, a tenor con lo dispuesto en la legislación vigente en ese momento. Segundo, en el 2009 el Consejo de Titulares llevó a cabo una votación para cambiar el criterio de participación sobre los elementos comunes de manera que esta se computara a base del área superficial del apartamento. Por último, la peticionaria es la dueña del *penthouse* del condominio, que tiene como anejo la azotea, y se niega a aceptar que su participación se vea afectada por la referida votación. Ante esa situación, procedemos a discutir el derecho aplicable.

## II.

La controversia ante nuestra consideración es si el área de la azotea adscrita al apartamento de la señora Trigo Margarida debe ser excluida al computar su participación sobre los elementos comunes. Para esto, es necesario determinar la Ley de Condominios aplicable al Condominio El Campeador, constituido en el 1972.

CC-2011-0639

## A. Ley del 1976

Antes de la Ley de 1976, el cálculo sobre las participaciones de los titulares se computaba a base del valor de la propiedad. A raíz de la aprobación de este estatuto se eliminó el criterio del valor de la propiedad y se sustituyó por el de superficie del apartamento. Esto quedó plasmado en el Artículo 8 de esa ley, 1976 Leyes de Puerto Rico 487, al establecer que:

> El titular tendrá derecho exclusivo a su apartamiento y a una participación con los demás titulares en los elementos comunes del inmueble, equivalente al porcentaje que represente la superficie del apartamiento en la superficie de la totalidad de apartamientos en el inmueble. En caso de apartamientos con dos o más niveles se considerará la superficie de cada nivel.

A su vez, esta ley definía el apartamiento, en su Artículo 3, como:

> cualquier unidad de construcción, suficientemente delimitada, consistente de uno o más espacios cúbicos, cerrados, parcialmente cerrados, o abiertos, y sus anejos, si algunos, aunque éstos no sean contiguos, siempre que tal unidad sea susceptible de cualquier tipo de aprovechamiento independiente, siempre que tenga salida directa a la vía pública o a determinado espacio común que conduzca a dicha vía. 1976 Leyes de Puerto Rico 487.

Así, los anejos quedaron incluidos como parte del área superficial que se computaba para determinar la participación de cada titular sobre los elementos comunes.

No obstante, aquellos condominios que ya estaban sometidos al régimen de propiedad horizontal con anterioridad a la vigencia de la Ley del 1976 —bajo el criterio del valor de la propiedad— debían contar con el voto de dos terceras partes de los titulares

que a su vez representaran las dos terceras partes del valor en los elementos comunes para cambiar al nuevo criterio. Sección 13, 1976 Leyes de Puerto Rico 511. O sea que esta ley, en su Sección 13, dejaba en manos de los titulares de condominios inscritos antes de 1976 la opción de cambiar el criterio para computar la participación de cada uno sobre los elementos comunes.

Según surge de la Exposición de Motivos, la aprobación de esta ley era inminente para revisar varios aspectos del régimen de propiedad horizontal que dificultan la vida en comunidad. En particular, una de las limitaciones más importantes de la ley que estaba vigente, la cual utilizaba el criterio de valor de la propiedad, era la falta de criterios objetivos para determinar el porcentaje de participación en los elementos comunes que correspondería a cada apartamento. Véase, Exposición de Motivos, 1976 Leyes de Puerto Rico 485.

**B. Ley del 2003**

Con la aprobación de la Ley del 2003, tanto la definición de apartamento como el criterio del área superficial para computar las referidas participaciones quedaron inalterados. Ahora bien, la Ley del 2003 no incluyó la opción establecida en la Sección 13 de la Ley del 1976 de que los titulares pudieran votar para cambiar el criterio que utilizarían para computar sus participaciones sobre los elementos comunes. Por ello, no estamos de acuerdo con lo que plantea la Opinión mayoritaria de que la Ley del 2003 no enmendó ni derogó "la salvedad y especificación

que hizo el legislador en la Sección 13 de la Ley Núm. 157, *supra* [Ley del 1976]".

Por el contrario, sostenemos que esa opción de cambiar el criterio fue eliminada con la aprobación de la Ley del 2003, la cual aplica retroactivamente a todos los condominios independientemente del momento de su constitución, según el Artículo 44 de esa ley y lo resuelto en <u>Consejo de Titulares v. Williams Hospitality</u>, 168 D.P.R. 101 (2006).

En específico, el Artículo 44 de la Ley del 2003 establece que esta "entrará en vigor noventa (90) días después de su aprobación y sus disposiciones regirán a todo inmueble sometido al Régimen de Propiedad Horizontal, cualquiera que sea el momento en que fuera sometido a dicho régimen". Luego de evaluar este artículo, junto con la intención legislativa, este Tribunal determinó que la Ley del 2003 aplica retroactivamente, pues no hacerlo equivaldría a laurear actuaciones que el estado de derecho vigente conjura y estaríamos incumpliendo, entonces, con la intención legislativa. <u>Consejo de Titulares v. Williams Hospitality</u>, *supra*, pág. 110. Allí indicamos que, con miras a atacar de frente las situaciones indeseables que surgían a base de la legislación anterior, el legislador dispuso en el Artículo 44 que el momento jurídico en que el inmueble haya sido sometido al régimen no da lugar a distinción alguna en cuanto a la aplicación de la ley. **Añadimos que esto surge, no solamente del texto de esta, sino también de la clara intención del legislador de frenar los abusos a los que la legislación anterior**

CC-2011-0639

**contribuía.** <u>Consejo de Titulares v. Williams Hospitality</u>, *supra*, pág. 107 (Énfasis suplido).

Al respecto, la Exposición de Motivos de la Ley del 2003 expone la necesidad de que el régimen de propiedad horizontal tuviese mayor eficacia. En ese sentido, aclara que

> no empece la conveniencia de introducir enmiendas a la legislación vigente, los ajustes que conviene hacer a nuestro sistema de la horizontalidad -- establecido inicialmente por la Ley 104 del 25 de junio de 1958 y mejorado luego por la Ley 157 del 4 de junio de 1976-- no deben llevar a la creación de un "nuevo" régimen de propiedad horizontal, ya que los principios fundamentales de nuestro sistema deben conservarse porque la práctica ha demostrado que son apropiados para la consecución de los fines sociales que este esquema persigue. Exposición de Motivos, 2003 Leyes de Puerto Rico 356.

Asimismo, tras la aprobación de la Ley del 2003, el Prof. Michel J. Godreau Robles, publicó su obra <u>La Nueva Ley de Condominios</u>, San Juan, Ed. Dictum, 2003, pág. 59. En esta sugiere varias medidas para "**atemperar** los reglamentos y divulgar las nuevas disposiciones de la Ley". (Énfasis suplido.)

Es decir, a partir de la aprobación de la Ley del 1976, los condominios constituidos previos al 1976 podían optar por seguir computando sus cuotas a base del valor de la propiedad o cambiar dicho cómputo por el del área superficial mediante la votación requerida por la Sección 13 de este estatuto. No obstante, a partir del 2003, todos los condominios debían ajustar sus escrituras y reglamentos para cumplir cabalmente con las disposiciones de la Ley del 2003, incluyendo computar sus participaciones sobre los elementos comunes utilizando el área superficial. Evidentemente, el legislador, al incluir que la Ley

del 2003 le aplicará a todos los condominios independientemente del momento de su constitución, remplazó la opción expuesta en la Sección 13 de la Ley del 1976 que tenían esos condominios por la obligación de cumplir con las disposiciones de la Ley del 2003.

### C. Enmienda del 2008

Posteriormente, la Asamblea Legislativa aprobó la Enmienda del 2008 cuyo propósito principal era enmendar el Artículo 3 de la Ley del 2003 para aclarar cuándo los anejos formarán parte del área superficial computada para establecer la participación de cada apartamento, de acuerdo a lo establecido en la Escritura Matriz. En la Exposición de Motivos de esta ley, se afirma que:

> [e]sta Asamblea ha advenido en conocimiento de que en la práctica actual para **la creación de regímenes de horizontalidad en Puerto Rico y al momento de redactar, preparar e inscribir las escrituras matrices y los planos constitutivos de dichos regímenes, los desarrolladores, notarios, registradores y el público en general**, están enfrentando una confusión generada por la interacción entre el Artículo 3 y el Artículo 8 de la Ley Núm. 104, según enmendada por la Ley Núm. 103, y los efectos de esta interacción en el cómputo de la medida superficial de los apartamientos y sus respectivos por cientos de participación en los elementos comunes de un condominio
>
> […]
>
> [d]e mantenerse la Ley de Condominios vigente sin esa aclaración, persistirá la confusión sobre el concepto de anejo y cuál debe ser el criterio a seguirse en cuanto al cómputo de los porcientos de participación de los apartamientos **cuando se preparen e inscriban los documentos constitutivos del régimen**… (Énfasis suplido.) Exposición de Motivos, Ley Núm. 281, *supra*.

Así pues, se le añadió a la definición de apartamento del Artículo 3 de la Ley del 2003 lo siguiente:

La medida superficial de aquellas áreas que sean asignadas en la escritura matriz y/o los planos constitutivos de un condominio como anejo de un apartamiento para su uso particular y con exclusión de los demás apartamientos, **no será incluida para computar el área superficial del apartamiento en cuestión ni su por ciento de participación en los elementos comunes del inmueble, a menos que el titular único de todos los apartamientos, o de haber más de un titular, todos los titulares por unanimidad, en la escritura matriz original para la constitución del régimen,** y/o en aquellos documentos que se preparen y otorguen para modificar un régimen ya existente, dispongan expresamente lo contrario para uno o más anejos, en cuyo caso, sólo se tomarán en consideración para dichos propósitos aquellos anejos que así se especifiquen en la escritura matriz original o los documentos para enmendar un régimen de propiedad horizontal existente. (Énfasis suplido.) Ley Núm. 281, *supra*.

Esta ley comenzó a regir inmediatamente después de su aprobación el 15 de agosto de 2008. Es norma conocida que el Artículo 3 del Código Civil, 31 L.P.R.A. 3, establece que las leyes no tendrán efecto retroactivo, si no dispusiesen expresamente lo contrario. En la Ley Núm. 281, *supra*, no se expresa que su aplicación debe ser retroactiva, contrario a la especificidad expuesta en el Artículo 44 de la Ley del 2003. Del mismo modo, como el principio de la irretroactividad de las leyes no es absoluto, hemos afirmado que procede la aplicación retroactiva de una ley, aunque no se haya dispuesto expresamente el efecto retroactivo, cuando dicha interpretación resulta ser más razonable a tenor con el propósito legislativo. Véase, Díaz v. Srio. de Hacienda, 114 D.P.R. 865 (1989).

III.

En virtud de la normativa expuesta, vemos que el Artículo 44 de la Ley del 2003 dispuso para que **todos** los condominios sujetos al régimen de propiedad horizontal atemperaran sus escrituras y reglamentos para cumplir con sus disposiciones. Así pues, desde el 2003, todos los condominios incluyendo los constituidos antes de la aprobación de la Ley del 1976, deben aplicar la definición de apartamento que incluye los anejos (Artículo 3) y el cómputo de la participación sobre los elementos comunes (Artículo 8). O sea que desde el 2003 el Condominio El Campeador, constituido en 1972, perdió la facultad de votar para cambiar el criterio de las cuestionadas participaciones que le confería la Sección 13 de la Ley del 1976.

Por lo tanto, concluimos que los Consejos de Titulares de todos los condominios bajo el régimen de la horizontalidad no tienen discreción para permanecer bajo las disposiciones de otro ordenamiento. Ello, pues la Ley del 2003 establece expresamente que el cómputo de participación se hará utilizando el área superficial y no el valor de la propiedad. Precisamente eso era lo que se intentaba eliminar con la Ley del 2003 y así lo afirmamos en Consejo de Titulares v. Williams Hospitality, *supra*.

Una mayoría de este Tribunal señala que debido a que el Artículo 8 no fue objeto de análisis por el legislador en el 2003, "sería arbitrario e injustificado concluir que lo que el legislador estatuyó en la Ley Núm. 157 de 4 de junio de 1976 con relación a la aplicación de la enmienda del Art. 8, fue trastocado por la Ley de Condominios, *supra*". Nota al calce 15 de

la Opinión mayoritaria, pág. 26. De esta forma, una mayoría de este Tribunal revoca implícitamente y sin justificación lo decidido en Consejo de Titulares v. Williams Hospitality, *supra*. Diferimos de esta conclusión.

Como hemos señalado, a diferencia de la Ley del 1976, la del 2003 no da la opción a los Consejos de Titulares de regímenes constituidos previos a su aprobación de decidir si desean cambiar la manera de computar la participación sobre los elementos comunes. Por lo tanto, solo procede aplicar el cambio de fórmula y el resto de las disposiciones de la Ley del 2003. En ese sentido, es improcedente la votación realizada por el Consejo de Titulares del Condominio El Campeador e incorrecta la aprobación de esta hecha en la Opinión mayoritaria.

Por otra parte, sostenemos que la Enmienda del 2008 es de aplicación prospectiva y no retroactiva como sugiere una mayoría de este Tribunal. Ante la falta de expresión en la ley sobre la retroactividad, esta es la interpretación más razonable y acorde con **la intención del legislador de aclarar la confusión sobre los anejos en la creación de los regímenes de propiedad horizontal.**

Por lo tanto, solo aquellos condominios que se constituyan bajo el régimen de propiedad horizontal a partir del 15 de agosto de 2008 tendrán la oportunidad, al redactar sus escrituras matrices, de incluir expresamente que los anejos, además de ser para el disfrute exclusivo de un apartamento, se computarán para efectos de la participación de cada titular sobre los elementos comunes. De no establecerlo así, automáticamente los anejos

quedarán excluidos, a menos que todos los titulares por unanimidad así lo acuerden.

Sin embargo, una mayoría de este Tribunal resuelve -sin decirlo expresamente- que la Enmienda del 2008 es de aplicación retroactiva. De hecho, la Opinión mayoritaria expresa que esta enmienda es "la legislación vigente al momento del cambio que realizaron los titulares del Condominio". Opinión mayoritaria pág. 32. Al mencionar "el cambio", se refiere a la votación realizada por los titulares en el 2009, la cual ya indicamos era improcedente e innecesaria. Con esta apreciación, una mayoría de este Tribunal trata al Condominio El Campeador, constituido en 1972, como si se hubiese constituido en el 2009. Este proceder nos parece irrazonable, máxime cuando el proceso de inscripción y constitución del régimen de propiedad horizontal es uno riguroso.

Por el contrario, como hemos visto, el Condominio El Campeador fue constituido en 1972 bajo la ley que utilizaba el criterio de valor de propiedad. Luego, desde el 2003 estaba **obligado** a utilizar el área superficial para el cómputo, por no haber votado para cambiar el criterio tras la aprobación de la Ley del 1976. Así se cumple con la retroactividad expresada en el Artículo 44 de la Ley del 2003 y lo determinado en Consejo de Titulares v. Williams Hospitality, *supra*.

De esta manera, los titulares de El Campeador tenían que ajustar las participaciones para cumplir con la Ley del 2003. Necesariamente, ello conllevaría un cambio en la participación de la señora Trigo Margarida que incluiría el área superficial de su

apartamento con su anejo. En este punto finalizaría nuestro análisis, pues la Enmienda del 2008 no debe ser utilizada para resolver la controversia ante nos. Ello, dado que esta enmienda aplica prospectivamente a los condominios que se constituyeron de ese año en adelante.

Estamos convencidos que aplicando lo anteriormente expuesto se cumplen con los distintos propósitos principales de los estatutos en cuestión. A saber, el de la Ley del 1976 de cambiar el criterio por el del área superficial; de la Ley del 2003 de fortalecer la eficacia del régimen de propiedad horizontal para todos los condominios; y el de la Enmienda del 2008 de enmendar la definición de apartamento para aclarar la confusión al constituir nuevos condominios.

Desafortunadamente, son innumerables las consecuencias negativas que la decisión que hoy se emite engendra sobre el estado de derecho vigente en el tema de propiedad horizontal. Por un lado, la Opinión mayoritaria revoca implícitamente sin fundamento alguno lo dispuesto en Consejo de Titulares v. Williams Hospitality, *supra*, e ignora el texto claro del Artículo 44 de la Ley del 2003. Entonces, los condominios constituidos antes de 1976 seguirían teniendo la opción de escoger entre el criterio del valor de la propiedad y el del área superficial. Además, solo podrían cambiarse al criterio más reciente si los titulares logran la votación estatuida en la Sección 13 de la Ley de 1976.

CC-2011-0639

Peor aun, todos los condominios constituidos antes del 2008 tendrán que modificar las participaciones de los titulares para excluir los anejos, contrario a la intención del legislador. Esto, pues los condominios constituidos antes del 2008 probablemente no incluyeron expresamente en sus escrituras matrices que los anejos van a formar parte del área superficial para efectos de la referida participación. Como única alternativa, todos los titulares por unanimidad tendrían que decidir que los anejos queden incluidos. Difícilmente se logrará la unanimidad requerida para ello. Tal como sucede en este caso con la señora Trigo Margarida, dueña del *penthouse*, es muy probable que aquel titular que tenga el anejo adscrito a su apartamento vote en contra de que se aumente su contribución para los gastos de conservación de las áreas comunes. Con ello, este titular controlará, a su beneficio, el veto para no aportar a los gastos de conservación con los anejos. Sostenemos que este no fue el propósito del legislador.

Del mismo modo, la Opinión mayoritaria tiene como efecto que todos aquellos condominios que a partir de 2003 calcularon la participación de los elementos comunes sobre el área superficial incluyendo los anejos, en cumplimiento de la ley, tengan que devolver el dinero pagado en exceso por aquellos titulares que tengan un anejo para su uso exclusivo. O incluso, puede que todas las participaciones calculadas desde el 2003 no hayan sido aprobadas por una votación de sus titulares y tendrían que volver a utilizar el criterio del valor de la propiedad.

Por el contrario, somos del criterio que la Ley del 2003 aplica retroactivamente a todos los condominios y la Enmienda del 2008 prospectivamente a los condominios constituidos a partir del 15 de agosto de 2008. De esta manera, los desarrolladores o el titular que tenga a su cargo la redacción e inscripción de la escritura matriz podrá establecer expresamente que los anejos se incluyan como parte de la participación discutida y esto no dependerá únicamente de que todos los titulares, por unanimidad, decidan si se incluyen o no.

IV.

Por los fundamentos que anteceden, revocaríamos la Sentencia del Tribunal de Apelaciones y desestimaríamos la querella presentada por la señora Trigo Margarida.

Federico Hernández Denton
Juez Presidente